KRAUS, Plaintiff, *v.* RILEY et al., Defendants.

(No. 7,841.)

(Submitted June 20, 1938.  Decided June 29, 1938.)

[80 Pac. (2d) 864.]

*Mr. Ed. Booth,* for Plaintiff, argued the cause orally.

*Mr. Harrison J. Freebourn,* Attorney General, *Mr. Mark H. Derr,* Assistant Attorney General, *Mr. C. J. Dousman* and *Mr. J. E. Erickson,* Counsel for the State Water Conservation Board, and *Mr. Harold G. Dean,* County Attorney of Sanders County, for Defendants, submitted an original and a supplemental brief; *Mr. Derr* and *Mr. Dousman* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

This is an original proceeding for an injunction. Plaintiff seeks to enjoin threatened action of the defendants under Chapter 85, Laws of 1937, and other related Acts hereinafter more particularly referred to.

The complaint, after alleging the official character of the several defendants, alleges that during the years 1936 and 1937 resident taxpayers of Sanders county organized a water users' association for the purpose of constructing a dam, reservoir, appurtenant ditches and works for the purpose of furnishing and distributing water to lands owned by stockholders of the

association for irrigation purposes; that such a project is of public interest to the people of that county in order to bring arid lands into productivity, and additionally that such a project will furnish employment to many otherwise indigent citizens; that on application of the county the Works Progress Administration has approved the project and is ready and willing to pay the wages of the laborers, provided that the sponsors will furnish the materials, equipment and supplies and supervise the work; that the amount of money required to be expended by the county will be approximately $10,000, and the amount which will be expended by the Works Progress Administration in labor will be many times that amount; that the county is without available funds with which to pay for materials, equipment, rentals, supplies and supervision; that the only means of providing the necessary revenue is for the county to issue relief warrants bearing 6 per cent. interest under Chapter 85, Laws of 1937, which the defendant county commissioners threaten to do; and that in consequence it will be necessary for the county commissioners to levy a tax of not to exceed one-half of one per cent. on the taxable property of the county with which to raise money to pay the warrants.

It is alleged that the project will be completed in 1938 and the warrants will be issued prior to March 15, 1939, the expiration date of Chapter 85, but that the levy of the tax cannot be made until after March 15, 1939; that since the levy cannot be made until after the expiration of that chapter, the levy would be illegal, and that the issuance of warrants payable after the expiration date of Chapter 85 is unauthorized.

It is further alleged that the Retirement Board in charge of Teachers Retirement Funds is authorized by Chapter 87, Laws of 1937, to invest its funds in county warrants and, unless restrained, will in conjunction with the State Treasurer invest its funds in such warrants, and that the State Board of Land Commissioners will also, unless restrained, invest school funds in such warrants.

It is further alleged that the Water Conservation Board, acting under sections 349.1 to 349.38, Revised Codes, plans to

enter into a contract with the county commissioners of Sanders county whereby that board will issue revenue bonds of the state; that if it does so and will take up the emergency warrants of the county, the county will not be required to pay the warrants, as the bonds so issued will be paid by funds procured from water users by the water users' association; that unless restrained the Water Conservation Board will issue bonds for such purpose, and that such bonds will be void as in conflict with section 4, Article XIII of the Constitution; that the warrants and the bonds will be void as in conflict with section 1 of Article XIII of the Constitution; and that Chapter 85, so far as it fixes and determines the amount of the tax levy to be made by the county commissioners, violates section 4, Article XII of the Constitution.

The answer admits all of the allegations of facts set forth in the complaint, but denies the legal conclusions drawn from the facts.

Section 2 of Chapter 85 plainly authorizes counties, school districts and cities to issue warrants which are denominated "relief warrants" in payment of materials, equipment, rentals, supplies or supervision when other sufficient funds are not available. These are made payable from a fund known as the "Emergency Relief Fund." (Sec. 3.) Section 4 authorizes the levy of a tax of not to exceed one-half of one per cent. on the taxable property of the political subdivision levying the tax, and contains this provision: "If and when all outstanding warrants issued and payable out of the emergency relief fund have been paid then the authority to levy the tax herein provided for shall cease to exist." Section 7 of the Act provides that it "shall continue in effect until March 15, 1939, and thereafter shall be of no force or effect."

The question here presented is whether taxes may be levied and collected after March 15, 1939, in order to raise money with which to pay warrants issued prior to that date and for a project completed before that date.

When relief warrants are issued they become an obligation of the political subdivision issuing the same, and it cannot be said that the legislature intended by the Act limiting its

effective date to March 15, 1939, to impair the obligation of the political subdivision to pay them, contrary to the express mandate of the Constitution. (Art. III, sec. 11.) Reasonable construction of Chapter 85 impels the conclusion that it should not exist after March 15, 1939, as authority for the creation of further obligatioñs, but that any obligations already incurred and for which warrants had been issued would still remain as obligations of the political subdivision and that there still would be authority in such subdivision to levy taxes in order to discharge the obligation.

A similar question was before the court in *State ex rel. Dragstedt* v. *State Board of Education,* 103 Mont. 336, 62 Pac. (2d) 330, where a statute akin to the one before us was under consideration, and this court said: ''As to whether a project could be validly initiated just prior to June 1, 1937, when Chapter 24, as extended, ceases to be a law, we express no opinion. The instant project was initiated by resolution of the board, in conjunction with that for the construction of the Journalism building, on July 6, 1933, followed by the formal resolution here considered on July 8, 1935, nearly two years prior to the expiration date of the Act, and application to the proper federal authorities for the grant and loan on July 10, 1935. The board has caused plans and specifications to be prepared for the construction of the building in question and has submitted them and has entered into negotiations with the federal authorities. It is evident that the project has been approved, as it is alleged in the petition that, 'in the event necessary money becomes available,' the grant will be made and bonds purchased by the Public Works Administration. The board seems to have moved with due expedition, and all preliminary steps should be taken and the building well on its way to erection by June 1, 1937. The fact that the building may not be completed until long after the expiration date of the law under which the project is initiated, contract let, and the erection of the building commenced cannot vitiate the authority under which the board is proceeding in compliance with the law.''

It follows that the warrants will be valid if issued prior to March 15, 1939, though payable thereafter, for a project completed before that time and tax levies will be valid to pay the same though levied after that date, so far as the point under consideration is concerned. Likewise, the State Board of Land Commissioners may at their discretion purchase such emergency relief warrants under the express authorization contained in section 5 of the Act.

The question is also presented as to whether the State Teachers Retirement Board has authority to invest funds under its control in such warrants.

Article XXI of the Constitution creates what is therein designated the "Montana Trust and Legacy Fund," which is comprised of several funds therein enumerated, but which makes no mention of the Teachers Retirement Fund. Section 10 of that Article provides in part: "The state of Montana shall accept for investment and administration together with the aforesaid funds constituting the Montana trust and legacy fund, but as separable parts thereof, sinking funds, permanent funds, and cumulative funds belonging to the state and its political subdivisions, and also other funds designated by the legislative assembly, when requested to do so by the authorities having the care and custody of such funds."

Chapter 87, Laws of 1937, is a revision of all prior laws relating to the Teachers Retirement Fund. Subdivision (1) of section 7 thereof reads: "The retirement board shall be the trustees of the several funds created by this Act and shall have cause to be invested and reinvested all of the funds subject to investment as part of the Montana trust and legacy fund." Fair construction of section 7 of that Act leads to the conclusion that the legislature desired to place the duty and authority to invest the funds mentioned in that Act in the Retirement Board. The reference in subdivision (1) to the trust and legacy fund, we think, has reference to any such funds as might have thus been invested before the passage of Chapter 87 as a separable part of the trust and legacy fund under section 10 of Article XXI of the Constitution quoted above. Other parts of sec-

tion 7 of the chapter also point to the conclusion that the Retirement Board should have control over the investment of these funds. Subdivision (4) of that section makes a prohibition against the members of the board having an interest in the gains or profits ''of any investment made by the Retirement Board.''

From a consideration of Chapter 87 in its entirety we conclude that the Retirement Board has supervision over the investment of the funds therein mentioned, and that it may in its discretion invest such funds in relief warrants issued under Chapter 85, Laws of 1937.

The further contention is made that Chapter 85 violates section 4 of Article XII of the Montana Constitution. That section reads: ''The legislative assembly shall not levy taxes upon the inhabitants or property in any county, city, town, or municipal corporation for county, town, or municipal purposes, but it may by law invest in the corporate authorities thereof powers to assess and collect taxes for such purposes.'' Chapter 85 does not levy a tax. It simply authorizes the political subdivision issuing the relief warrants to do so and fixes a maximum rate. The amount of the levy is left with the local authorities, as is also the question of whether any warrants will be issued necessitating any levy.

It is asserted that the Water Conservation Board is without power to issue revenue bonds to be retired by funds obtained from water users. This power is expressly conferred by sections 349.6 et seq., Revised Codes of 1935.

It is further contended that the issuance of such bonds for the purpose alleged would amount to a lending of credit in aid of an association, contrary to section 1, Article XIII of the Constitution. It is true that the proposed plan will, in a sense, amount to a loan of credit to the association. But the issuance of the bonds does not constitute the lending of the credit of the state, county, city, town or other subdivision of the state within the meaning of section 1, Article XIII. The bonds are not an obligation of the state, but are secured ''only by the revenues of such works and the funds received from the sale or

disposal of water and from the operation, lease, sale or other disposition of the works, property and facilities to be acquired out of the proceeds of such bonds.'' (Sec. 349.6; and see sec. 349.8, Rev. Codes.) A like contention was held groundless in *State ex rel. Normile* v. *Cooney,* 100 Mont. 391, 47 Pac. (2d) 637. For this same reason the issuance of the bonds will not violate section 4, Article XIII of the Constitution.

It is contended that section 1 of Article XIII is violated by the statute authorizing the issuance of the relief warrants. It is true that the association and its individual stockholders will profit by the issuance of the warrants and the construction of the proposed project; but this in itself does not condemn the Act authorizing the warrants. In *Stanley* v. *Jeffries,* 86 Mont. 114, 284 Pac. 134, 70 A. L. R. 166, we said: ''Section 1, Article XIII of the Constitution, was intended to prevent the extension of public aid to private enterprise or that of a semi public nature, yet having for its purpose gain to the individual, association, or corporation building it up, and the inhibitions therein contained do not apply to such enactments as are intended for the relief of the poor (*State ex rel. Cryderman* v. *Wienrich,* 54 Mont. 390, 170 Pac. 942), the Workmen's Compensation Act, Laws 1915, Chapter 96 (*Lewis & Clark County* v. *Industrial Acc. Board,* supra [52 Mont. 6, 155 Pac. 268, L. R. A. 1916D, 628]), or the War Defense Act, Laws 1918, Ex. Sess., Chapter 21 (*State ex rel. Campbell* v. *Stewart,* 54 Mont. 504, 171 Pac. 755, 757, Ann. Cas. 1918D, 1101), as in each of these instances the purpose to be served was found to be a public one, although private individuals might profit thereby. The mere fact that the money raised will go to individuals will not condemn the Act in question, since the test is not as to who receives the money, but, Is the purpose for which it is to be expended a public purpose?''

Under section 15 of Article III of the Constitution, the use of water for sale, rental, distribution or other beneficial use is expressly declared to be a public use. Furthermore, section 5 of Article X makes it the duty of the county to provide for those of its inhabitants who, by reason of age, infirmity or misfortune,

may have claims upon the sympathy and aid of society. Chapter 85 has for its purpose the development of projects furnishing employment and, incidentally, it benefits the poor and indigent. Its purpose is to promote a public, and not a private, function. Moreover, the works, when constructed, are owned and controlled by the State Water Conservation Board, which is a state agency and not owned or controlled by the association. The Act does not conflict with section 1, Article XIII of the Constitution.

The complaint suggests the possibility that sufficient warrants will be issued so that, when added to the outstanding obligations of the county, they may exceed the limit fixed by section 5, Article XIII of the Constitution. Nothing that we have said herein is to be understood as permitting the constitutional limit of indebtedness to be exceeded. No facts are presented tending to show that Sanders county will have exceeded its constitutional limit of indebtedness by the issuance of the warrants here in question.

Other contentions made have been considered by us, but we find no justification for enjoining any of the threatened acts. Accordingly, the writ applied for is denied and the proceeding dismissed.

ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS, and HONORABLE RUDOLPH NELSTEAD, District Judge, called in to sit in place of MR. CHIEF JUSTICE SANDS because of the latter's illness, concur.