C. P. FICKES, Plaintiff and Appellant, v. MISSOULA
COUNTY et al., Defendants and Respondents.

No. 11836.
Decided June 4, 1970.
470 P.2d 287.

260

Worden, Worden, Thane & Robb, Donovan Worden, Jr., Missoula, argued, for appellant.

H. J. Pinsoneault, County Atty., Garlington, Lohn & Robinson, J C. Garlington, Missoula, argued, for respondents.

A. W. Scribner, Helena, argued, amicus curiae.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

The plaintiff C. P. Fickes brought this action to enjoin the defendants, the Board of County Commissioners of Missoula County, from taking certain actions under the provisions of the "Industrial Development Projects Act" of 1965 and to declare the same unconstitutional. The defendants filed a motion to dismiss the complaint upon the grounds it did not state a claim upon which relief could be granted, and a motion under Rule 12(c), M.R.Civ.P. for judgment on the pleadings.

The district court granted the defendants' motion for judgment on the pleadings and directed that final judgment be entered in favor of the defendants. From this judgment plaintiff appeals. Amicus curiae representing the Montana Chamber of Commerce appeared on the appeal by brief and argument.

Under the terms and provisions of sections 11-4101 through 11-4110, R.C.M1947, as amended, entitled "Industrial Development Projects" the Board of County Commissioners of Missoula County adopted a resolution whereby Missoula County would issue revenue bonds in the sum of $14,000,000 to assist Hoerner Waldorf Corporation of Montana, a Deleware corporation, to acquire and erect certain facilities to be used in connection with

its pulp and paper mill located west of the city of Missoula. The facilities to be so acquired and erected to be used by Hoerner Waldorf Corporation in connection with air and water pollution control projects.

The projects for which the bonds are to be issued were, at the time of the adoption of the resolution by the county commissioners, already in the process of planning, in whole or in part, by the corporation.

The facilities to be acquired and erected are to be owned by Missoula County; mortgaged to secure the repayment of the bonds by the county; and leased to Hoerner Waldorf Corporation.

The rentals to be paid under the lease are to be pledged and assigned to a trustee for the repayment of the principal and interest due on the bonds, and performance of the lease is guaranteed by Hoerner Waldorf Corporation, a Delaware Corporation, the parent company of Hoerner Waldorf Corporation of Montana.

Plaintiff contends the Industrial Development Projects Act of 1965, as amended, is unconstitutional in that:

(1) The bonds to be issued by the county and the mortgage to secure payment of the bonds constitute a lending of the credit of the county in violation of Article XIII, Sec. 1 of the Constitution of Montana.

(2) That said bonds and mortgages constitute a debt of the county which will be incurred without approval of a majority of the electors of the county, voting at an election, as required by Article XIII, Sec. 5 of the Constitution of Montana.

(3) That the debt that will be created if said bonds are issued will exceed the debt limit established for counties under the provisions of Article XIII, Sec. 5 of the Constitution of Montana.

(4) Since section 11-4108, R.C.M.1947 provides for taxation

of property notwithstanding it is owned by a county, this section is unconstitutional under the provisions of Article XIII, Sec. 2 of the Constitution of Montana.

(5) The proposed lease agreement provides that Hoerner Waldorf Corporation of Montana shall have the option to purchase the property, after all bonds are paid, for the sum of $1,000. This constitutes a grant or donation by Missoula County to the corporation and is unconstitutional under the provisions of Article XIII, Sec. 1 of the Constitution of Montana.

(6) The issuance of bonds to acquire an existing project or to construct an addition to an existing project is contrary to the provisions of Article XIII, Sec. 3 of the Constitution of Montana.

Plaintiff further contends that the actions of the Board of County Commissioners of Missoula County are contrary to the force and effect of the statutes of the state of Montana in that:

(7) The sale contemplated under the lease agreement does not provide for sale at public auction and is therefore contrary to the provisions of section 16-1009, R.C.M.1947.

(8) The project encompassed in the agreement between Missoula County and Hoerner Waldorf requiring purchase of property of the county in a sum in excess of $2,500 without public bid is contrary to the provisions of section 16-1803, R.C.M.1947.

(9) The issuance of revenue bonds pursuant to the provisions of the Industrial Development Projects Act and the leasing of facilities to private industry is not a public purpose and therefore exceeds the powers of the counties of the state of Montana and the powers of the Board of County Commissioners.

(10) Under the Constitution and Statutes of the state of Montana, a county may only exercise its powers within its own boundaries. Therefore section 11-4102, R.C.M.1947, which provides that a project may be partially within and partially without the boundary of a county, is an attempt to create addition-

al powers not contemplated in the Constitution and statutes of the state of Montana.

(11) The lease agreement creates a term of lease which may exceed ten years and is therefore contrary to the terms and provisions of section 16-1030, R.C.M.1947.

Plaintiff further contends:

(12) In the event the Industrial Development Projects Act is declared to be constitutional, the acts of the Board of County Commissioners of Missoula County are illegal in that the project to be financed consists of air and water pollution control devices and such projects are not within the purview and intent of the legislature as set forth in the definition of "project" by section 11-4101, R.C.M.1947.

The foregoing issues numbered 1 through 5, and 9, presented in appellant's brief, concern constitutionality of the Industrial Development Projects Act. The other issues raise questions as to the applicability of various statutes limiting the way in which county property and contracts may be dealt with.

First, as to constitutionality, Article XIII, Sec. 5 of the Constitution of Montana provides:

"No county shall be allowed to become indebted in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five (5) per centum of the value of the taxable property therein, to be ascertained by the last assessment for state and county taxes previous to the incurring of such indebtedness, and all bonds or obligations in excess of such amount given by or on behalf of such county shall be void. No county shall incur any indebtedness or liability for any single purpose to an amount exceeding ten thousand dollars ($10,000) without the approval of a majority of the electors thereof, voting at an election to be provided by law."

Issues 2 and 3, as to whether a "debt" or "liability" prohibited by Article XIII, Sec. 5 of the Constitution of Montana will be created by this plan, will be considered first.

264

Appellant states correctly that there is no plan for submitting this bond issue to the voters, and that the county debt limit would be exceeded by the addition of a fourteen million dollar bonded debt to its present total. Therefore, if the bonds now to be issued are an "indebtedness or liability" as those terms are used in Article XIII, Sec. 5, the entire program is prohibited by the Constitution. However, this basic premise for appellant's contention is not correct, as can readily be shown by our own precedents.

There is a long history in Montana of the financing of various projects by revenue bonds as distinguished from general obligation bonds payable out of ad valorem property tax receipts. These have uniformly been held *not* to create a debt or liability within the meaning of Article XIII, Sec. 5 of our Constitution.

This is true as to dormitory revenue bonds (Barbour v. State Board of Education, 92 Mont. 321, 13 P.2d 225); student union building bonds (State ex rel. Veeder v. State Board of Education, 97 Mont. 121, 33 P.2d 516); water conservation board bonds (State ex rel. Normile v. Cooney, 100 Mont. 391, 47 P.2d 637); housing authority bonds (Kraus v. Riley, 107 Mont. 116, 80 P.2d 864); and veterans bonus bonds (Cottingham v. State Bd. of Exam., 134 Mont. 1, 328 P.2d 907), just to give a few illustrations. The common quality of all these projects is that in each there is explicit provision that the public body issuing the bonds does not obligate its taxing power to pay for them. The same exact provision is written into the law and the bonds involved in this case, so that the same decision must necessarily be made in this case.

The dormitory bonds case is analogous in its essential respects. The statute there involved (Chap. 94, Laws of 1929) read in part:

"Section 4. No obligation created hereunder shall ever be or become a charge against the State of Montana but all such obligations, including principal and interest, shall be payable

solely: (a) From the net rents and income pledged. (b) From the net rents and income which has not been pledged for other purposes arising from any other residence halls or like improvement under the control and management of said Board; or (c) From the income derived from gifts and bequests made to the institutions under the control of said Board for residence hall purposes.

＊　　＊　　＊　　＊　　＊　　＊　　＊

"Section 6. No State funds shall be loaned or used for this purpose. ＊ ＊ ＊"

Referring to Article XIII of the Montana State Constitution the Court held in Barbour v. State Board of Education, 92 Mont. 321, 13 P.2d 225:

"By the very terms of chapter 94, the faith and credit of the state of Montana is not involved in the issuance of the certificates of indebtedness referred to. Neither will the taxpayers of the state ever become burdened or called upon to undertake to repay the obligations which may be created in furtherance of the plan which the resolution of the board of education contemplates. We therefore conclude without difficulty that the transaction does not, nor does the law, offend against these provisions of the Constitution."

Compare the dormitory bond law with the revenue bond law here being considered. Its section 11-4103, R.C.M.1947, reads in part:

"Limited obligation bonds—form and contents—sale—negotiability. (1) bonds issued by a municipality or county under the authority of this act shall be limited obligations of the municipality or county. Bonds and interest coupons, issued under the authority of this act, shall not constitute nor give rise to a pecuniary liability of the municipality or county or a charge against its general credit or taxing powers. Such limitation shall be plainly stated upon the face of each of such bonds. ＊ ＊ ＊"

The words of the *Barbour* decision fit perfectly the industrial development revenue bond law as well as the dormitory bond law.

Article XIII touches only ad valorem tax obligations which of course could never be imposed to pay these industrial bonds because of the express prohibition in section 11-4103 just above quoted. Even the pledge and expenditures of tax revenues, coming from other sources such as cigarette taxes, does not violate Article XIII.

This interpretation of Article XIII was expressly made in the Korean bonus case, where a cigarette tax was the source of repayment. Thus, even though there was a liability to keep up the cigarette tax, the constitutional provisions were held not applicable by this Court in Cottingham v. St. Bd. of Exam., 134 Mont. 1, 328 P.2d 907:

"In effect, section 2, Article IX, amended the words 'debt or liability' as they appear in section 2, Article XIII, and has effectively confined them to debts or liabilities which must be retired out of ad valorem taxes. In this manner we avoid a conflict and unreasonableness.

"Looking now to the instant case, we find that the bonds, assuming they create a 'debt or liability,' do not create the type of 'debt or liability' which section 2, Article XIII, prescribes, since in this case retirement of the bonds looks to the levy of an excise tax without the taxpayer being enrolled on the assessment rolls."

Therefore, the industrial development revenue bond law, and the bond issue now before the Court, following the precedents of the past, are held not to create a "debt or liability" of the nature forbidden by Article XIII. Not only does the law expressly so provide, and the cases so hold, but at page 7 of the Indenture of Trust, the form of the bond itself contains this final commitment:

"The Bonds and the interest coupons appertaining thereto

do not now and shall never constitute a charge against the general credit or taxing powers of the County."

Next, appellant's issues No. 1, 5 and 9 are concerned with Article XIII, Sec. 1 of the Constitution of Montana which reads:

"Neither the state, nor any county, city, town, municipality, nor other subdivision of the state shall ever give or loan its credit in aid of, or make any donation or grant, by subsidy or otherwise, to any individual, association or corporation, or become a subscriber to, or a shareholder in, any company or corporation, or a joint owner with any person, company or corporation, except as to such ownership as may accrue to the state by operation or provision of law."

Is "credit in aid" being given by the county; or is the county loaning its credit in aid of, or making any donation or grant as that language is used and has been interpreted?

In Willett v. State Board of Examiners, 112 Mont. 317, 322, 115 P.2d 287, this Court rendered a decision very closely in point in approving the Veterans Memorial Building bond issue, payable out of future income from the capitol land grant. The building was to house private organizations in part. This Court said:

"The test to be adopted in determining whether a donation or grant is prohibited under this section is whether the donation or grant is for a public purpose. * * * What is a 'public purpose' is a question primarily for legislative determination, with which we will not interfere unless there has been a clear abuse of power. People ex rel. Douglas v. Barrett, 370 Ill. 464, 19 N.E.2d 340. That the project here is for a public purpose there can be no reasonable doubt; at least we cannot say that the legislature abused its power in so determining. The fact that the named organizations incidentally derive special benefit from the project does not bring the Act in conflict with section 1, Article XIII."

Thus, here, since no debt or liability is created, we

look to see if an indirect benefit to the industry by having a favorable type of financing, will condemn the Act in question. The legislative purpose of encouraging the development of the state's natural resources without cost to the taxpayer is being accomplished. Here, every dollar expended on the bond issue is to be repaid from and by the project the issue makes possible. The county commissioners expressly find the project will be of value as a source of employment and county revenue and will protect the health, safety and welfare of the citizens. The plant will be enabled to comply with the new legal requirements for environmental improvement. Thus, a valid purpose appears.

Similar cases arose in connection with water conservation board bonds, and Great Falls housing authority bonds. In both instances, revenue bonds were being issued to finance projects which would relieve agricultural distress or slum housing distress to the obvious benefit of both the economy and society of Montana and to individuals who would get the irrigation water or the improved housing occupancy.

In the case concerning water conservation board bonds, Kraus v. Riley, 107 Mont. 116, 124, 80 P.2d 864, 867, this Court said:

"The mere fact that the money raised will go to individuals will not condemn the act in question, since the test is not as to who receives the money, but, is the purpose for which it is to be expended a public purpose?"

In the Great Falls housing case, Rutherford v. City of Great Falls, 107 Mont. 512, 517, 86 P.2d 656, 658, this Court said:

"Legislation having for its purpose the eradication of slums and the substitution in place thereof of safe and sanitary dwellings is well within the definition of 'public purpose" as defined in Green v. Frazier, 44 N.D. 395, 176 N.W.11, affirmed by the United States Supreme Court in 253 U.S. 233; 40 S.Ct. 499, 64 L.Ed. 878, as follows [page 17] : 'A public

purpose  *  *  *  has for its objective the promotion of the general welfare of all the inhabitants or residents within a given political division, as, for example, a state, the sovereignty and sovereign powers, of which are exercised to promote the public health, safety, morals, general welfare, security, prosperity, contentment and equlity before the law of all the ciitizens of the State."

And, see our discussion in Jones v. Burns, 138 Mont. 268, 290, 357 P.2d 22, 34, where we said:

"This quotation points out three propositions which are of primary significance in determining whether legislation is violative of Mont. Const., art,XIII, § 1. They are: (1) The tests for determining the validity of a donation or grant is whether it is for a public purpose; (2) The question what is a public purpose is primarily for the legislature; and, (3) The fact that individuals, associations, or corporations derive special benefit from the legislation does not necessarily affect its validity."

In all of our Montana precedents reviewed, the mere incidental benefits to a private corporation do not change a public purpose to a private one being the loaning of credit or aid as prohibited. The same rationale applies to the option to purchase for $1,000 after the bonds are paid.

The appellant cites the Idaho case of Village of Moyie Springs, Idaho v. Aurora Mfg. Co., 82 Idaho 337, 353 P.2d 767. Also, prior to constitutional amendments, a Nebraska case, State ex rel. Beck v. City of York, 164 Neb. 223, 82 N.W.2d 269.

The Idaho case is authority to the contrary of our holding here, but it stands alone and we simply do not agree with it. For an example of cases in jurisdictions which have upheld similar laws and have rejected the Idaho holding, see Carruthers v. Port of Astoria, 249 Or. 329, 438 P.2d 725; Uhls v. State ex rel. City of Cheyenne (Wyo.1967) 429 P.2d 74;

Green v. City of Mt. Pleasant, 256 Iowa 1184, 131 N.W.2d 5; City of Gaylord v. Beckett, 378 Mich. 273, 144 N.W.2d 460.

We hold that the Industrial Development Projects Act is not violative of Article XIII, Sec. 1, of the Montana Constitution.

Next we consider appellant's issues No. 6 and 12. Appellant argues that the issuance of bonds to acquire an existing project is contrary to Art. XIII, Sec. 3 of the Constitution of Montana; and, further, in this connection that air and water pollution control devices are not a "project" within the definition of "project" contained in section 11-4101(2), R.C.M.1947.

We have some difficulty in coming to grips with these contentions. However, appellant suggests that the name of the Act clearly indicates the legislature contemplated only "new industry" and not improvement of existing industry. While it is true that pollution controls or any other equipment useful in an industrial project are not specifically named in the Act, yet the legislature made it clear in section 11-4107 that it intended to cover many items when it specified in its provisions for the use of proceeds of bond sales that they could be used for "acquiring or improving" and the terms "all or any part of a project."

Finally, as a constitutional matter, the appellant under issue No. 4 argues that Article XII, Sec. 2 of the Constitution of Montana is violated. Article XII, Sec. 2 provides:

"The property of the United States, the state, counties, cities, towns, school districts, municipal corporations and public libraries shall be exempt from taxation * * *."

Here, in section 11-4108, R.C.M.1947, it is provided:

"Notwithstanding that title to a project may be in a municipality or county, such projects shall be subject to taxation to the same extent, in the same manner, and under the same procedures as privately owned property in similar circumstances, if such projects are leased to or held by private interests on both the assessment date and the date the levy

is made in any year; but such projects shall not be subject to taxation in any year if they are not leased to or held by private interests on both the assessment date and the date the levy is made in any year; provided, that where personal property owned by a municipality or county is taxed under this section and such personal property taxes are delinquent, levy by distress warrant for collection of such delinquent taxes may only be made on personal property against which such taxes are levied."

The problem then is whether the broad constitutional exemption of county property from taxation must necessarily extend to project property in which the county has a trust interest as distinguished from the beneficial ownership.

In State ex rel. City of Great Falls v. Jeffries, 83 Mont. 111, 270 P. 638, this Court held that the collection of special improvement assessments upon a lot belonging to a county was proper, where "the lot in question is not used for county purposes."

Also, in State v. King Colony Ranch, 137 Mont. 145, 350 P.2d 841, this Court did not extend the companion exemption of religious property from taxation to the lands of a religious group where the lands were being used for commercial farming, and not for religion.

Thus, this Court has looked to the use to which the property is held, and not the title. Article XII, Sec. 7 of the Montana Constitution provides that all corporations shall be taxed, and since the Hoerner Waldorf Corporation will "use" the property they necessarily will be taxed, and to achieve harmony and consistency, Sec. 2 of Article XII, is not applicable here. (See 84 C.J.S. Taxation §§ 203 and 204.)

On issues No. 7, 8 and 11 the appellant raises questions as to whether the manner of structuring and eventually liquidating the industrial development bond issues violates the general statute regulating the administration of county property and business. Thus, appellant argues that the county cannot make

a lease longer than 10 years, section 16-1030, R.C.M.1947; cannot sell the land except at auction after the bonds are paid, section 16-1009, R.C.M.1947; and cannot contract for construction except on public bidding, section 16-1803, R.C.M.1947.

█ █ In approaching these statutory questions, appellant maintains that the rule of construction is that in interpreting several statutes relating to the same subject matter, the specific statute should prevail over the general. This is the rule. (See Monarch Lumber Co. v. Haggard, 139 Mont. 105, 360 P.2d 794.) However, we do not agree that the restrictive statutes mentioned above are the special statutes in this instance. Even though the legislature has put in the Industrial Development Projects Law flexible procedures, they are designed for the purpose of doing a specific job, and these are special in that sense and would prevail over the general statutes having to do with broad powers of administrative handling of county property and affairs.

In Montana-Dakota U. Co. v. City of Havre, 109 Mont. 164, 94 P.2d 660, this Court said:

"Chapter 141 is a special statute, giving to the city, acting through its governing body, the authority to do everything necessary to acquire a gas distribution system and an adequate supply of gas, and this it may do without complying with the provisions of section 5070. If this were not so, then the broad provisions of Chapter 141 purporting to give the municipal authorities power to construct a municipal gas project, could be frustrated by the qualified electors declining to authorize the purchase of gas. This was not the legislative intent. The acquisition of a supply of gas is so interwoven with the project as a whole that authority on the part of the governing body of the city to construct the system without a vote of the people carries with it the right to contract for a supply of gas without such vote.

"The next contention of plaintiff is that the city by the proposed contract is assuming obligations without submitting the

proposal to a vote of the resident taxpayers. Here again reliance is placed on section 5070, but the complete answer to the contention is that Chapter 141, and not section 5070, controls here. * * *

"The wisdom or necessity of eliminating, with reference to the projects contemplated by Chapter 141, all the safeguards provided in the public interest by general statutory requirements for competitive bids and for approval by the voters, is solely for the legislature to determine, and with its determination this court cannot interfere."

In numerous other cases we have held to the same effect. See State v. Langan, 151 Mont. 558, 445 P.2d 565; McAlear v. U.C.C., 145 Mont. 458, 405 P.2d 219; Wymont Tractor & Equipment Co. v. U.C.C., 128 Mont. 501, 278 P.2d 208.

Thus here, the Industrial Development Projects Act is the special act and governs.

Finally, the appellant urges in issue No. 10 that since the Industrial Development Projects law allows a county to engage in a project "partially within or partially without" the county (section 11-4102) the jurisdiction of a county is extended and section 16-101, R.C.M.1947, is violated. Section 16-101, R.C.M.1947, is violated. Section 16-101 states simply that "A county is the largest political subdivision of the state having corporate power."

We need not concern ourselves with this issue since the record here shows that the project is located entirely in Missoula county and hence no question exists other than a hypothetical one.

We have examined all of the contentions raised by the appellant and find no basis to set aside the decision of the district court. The Industrial Development Projects Act of 1965 is a valid expression of the public will, and the resolution of the Board of County Commissioners of Missoula County is a proper exercise of that authority. Accordingly the judgment is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, HASWELL and DALY, concur.