STATE ex inf. John C. DANFORTH, Attorney General, ex rel. FARMERS' ELECTRIC COOPERATIVE, INC., Relator,

v.

STATE ENVIRONMENTAL IMPROVEMENT AUTHORITY, Respondent.

No. 58765.

Supreme Court of Missouri,
En Banc.

Jan. 13, 1975.

Cleaveland & Macoubrie, Lloyd A. Cleaveland, Chillicothe, for relator; Wood, Dawson, Love & Sabatine, LeRoy Love, Richard F. Raymond, New York City, of counsel.

Stockard, Andereck, Hauck, Pickett & Sharp, Eugene E. Andereck, Jefferson City, for amici curiae, Associated Electric Cooperative, Inc.; Federated Electric Cooperative, Inc.; Great Lakes Carbon Corp.; Missouri Portland Cement Co.; and St. Joe Minerals Corp.

Lathrop, Koontz, Righter, Clagett, Parker & Norquist, W. H. Bates, Carl A. Hummel, C. David Barrier, Kansas City, for amici curiae Armco Steel Corp. and Baychem Corp.

Veryl L. Riddle, Thomas C. Walsh, St. Louis, for Anheuser-Busch, Inc., amicus curiae; Bryan, Cave, McPheeters & McRoberts, St. Louis, of counsel.

Stewart W. Smith, Jr., Carl H. Hendrickson, St. Louis, for Union Electric Company.

Arthur J. Doyle, Samuel P. Cowley, Kansas City, for Kansas City Power & Light Co.

Charles S. Wilcox, Wilcox & Houts, St. Joseph, for St. Joseph Light & Power Co.

Gene E. Voigts, Shook, Hardy & Bacon, Kansas City, for respondent.

MORGAN, Judge.

This is an original proceeding in quo warranto filed by the Attorney General at the relation of Farmers Electric Cooperative, Inc., against the State Environmental Improvement Authority. The information challenges the constitutionality of Chapter 260, §§ 260.005 through 260.090, RSMo, 1973 Supp., V.A.M.S., which was enacted

by Laws 1972, H.B. No. 1041, §§ 1 to 19, and made effective January 22, 1973; and, thus seeks to oust respondent (the Authority) from exercising those rights, privileges and franchises granted to it as a body corporate by the statutory provisions noted.

The facts are not in dispute. As submitted, the issues are of law alone and involve the proper construction to be placed on pertinent provisions of the 1945 Constitution of Missouri and their applicability to the Act (Chapter 260).

The chapter is entitled "Environmental Control" and the designated purpose is set out in § 260.015, to-wit: "The authority is authorized to provide for the conservation of the air, land and water resources of the state by the prevention or reducing the pollution thereof and proper methods of disposal of solid waste and to further such programs the authority is authorized to acquire and construct projects and to issue bonds and notes as herein provided to pay the costs thereof. Any such projects shall be in furtherance of applicable federal and state standards and regulations." A comprehensive listing of all of the provisions of the Act, which detail the guidelines to be followed by the Authority in pursuing the declared objective, is not appropriate; but, we do note such of them as necessary to identify the general scheme.

The respondent (Authority) is authorized to lease or sell such pollution control facilities ("projects") to any private person, firm, corporation, public body, political subdivision or municipal corporation (§ 260.035(6)). Any such sale may be on such terms as respondent deems advisable, and respondent also has the right to receive for such sale a note or notes from any entity to whom a sale is made so long as the contract of sale provides for payments adequate to pay the bonds issued by respondent to finance the facility (260.035(14)). The pollution control facilities "shall be subject to all real and tangible personal property taxes and assessments of the state of Missouri, or any county, municipality, or any governmental subdivision thereof" (§ 260.075). The notes and bonds issued by respondent and the income therefrom are at all times to be exempt from taxation, except for death, gift and transfer taxes (§ 260.075). Furthermore, the notes and bonds are not to constitute an indebtedness of the state and they must contain on their face a statement to that effect (§ 260.065).

The bonds which respondent may issue for the financing of the pollution control facilities are revenue bonds payable out of such revenues of respondent as it may by resolution provide. Respondent is the "authority" in the following statutory excerpts:

Every issue of its bonds shall be payable out of the revenues of the authority which may be pledged for such payment, without preference or priority of the first bonds issued, subject to any agreements with the holders of any other bonds or pledging any specified revenues (§ 260.040).

"Revenues", all rents, installment payments on notes, revenues, charges and other income received by the authority in connection with any project and any gift, grant, or appropriation received by the authority with respect thereto (§ 260.005(8)).

Any resolution authorizing any notes or bonds may contain such provisions, covenants and agreements . . . as the authority determines necessary. Such provisions, covenants and agreements may include . . . (1) Pledging of all or any part of the revenues . . . to secure the payment of the notes or bonds . . . (2) The use and disposition of the revenues . . . (3) The fixing of rents, fees and other charges and the pledging of the same . . . to pay . . . the principal of and interest on notes, or bonds secured by the pledge of such revenues . . . (§ 260.055).

In addition, § 260.055(4) permits respondent to establish "reasonable reserves to

secure the payment of . . . notes or bonds." Other relevant statutory or constitutional provisions will be brought out as relevant to an analysis of the case.

Relator raises nine issues of constitutionality, one issue of statutory construction and anticipates one defense (laches), against which it argues.

While resolving the same, we are to be guided by those principles of constitutional construction long established by the law of this state, and we adopt the summarized version thereof with which the parties agree. The state constitution, unlike the federal constitution, is not a grant of power, but as to legislative power, it is only a limitation; and, therefore, except for the restrictions imposed by the state constitution, the power of the state legislature is unlimited and practically absolute. Kansas City v. Fishman, 362 Mo. 352, 241 S.W.2d 377 (1951). An act of the legislature is presumed to be valid and will not be declared unconstitutional unless it clearly and undoubtedly contravenes some constitutional provision. State ex rel. Eagleton v. McQueen, 378 S.W.2d 449 (Mo. banc 1964). Legislative enactments should be recognized and enforced by the courts as embodying the will of the people unless they are plainly and palpably a violation of the fundamental law of the constitution. Borden Company v. Thomason, 353 S.W.2d 735 (Mo. banc 1962).

The burden is upon relator to demonstrate that the legislative enactments, now challenged, run afoul of some constitutional prohibition; and, due to the number of issues presented, each will be identified and considered in the order in which they appear in relator's brief.

### Point I

Relator contends the Act is unconstitutional because it permits the granting of public money and the giving and lending of public credit to private entities and permits the lending and pledging of the state's credit for the payment of private liabilities, all in violation, respectively, of §§ 38(a), 39(1) and 39(2) of Art. III of the Missouri Constitution, V.A.M.S.

Such constitutional provisions need not be set out at this point for the simple reason it can not be questioned that they declare the specific proscriptions noted. The crux of the argument is that: "The . . . enrichment of private industry in the form of the sharply reduced financing costs, because of the Federal [and state] tax-exemption on the bonds, constitutes not only a lending and pledging of the State's credit, but more plainly constitutes a gift of public moneys to private industry . . . [T]he plain design of the framers of the Constitution of Missouri [was] to forbid the subsidization by the State of private industry . . . ." To buttress this phase of its argument relator points up that in 1960 Missouri adopted amendments to its constitution which permitted cities, incorporated towns and villages to finance industrial expansion by issuing industrial development revenue bonds (Art. VI, §§ 23(a) and 27) and concludes thereby that, ". . . it follows that the Constitution of Missouri must be amended to permit the State or a state-constituted instrumentality, such as respondent, to subsidize industry by the issuance of pollution control bonds." For clarity, we first seek to evaluate the analogy just noted. It is common knowledge that authorization of revenue bonds for development or expansion of industry within the state did result in a direct monetary benefit for the particular industry involved—generally, evidenced by land and plant facilities for use in profit making activities. To the contrary, the environmental improvement scheme contemplated by the challenged statutory provisions does not have such a comparable and direct "private" benefit. The "facilities" or "projects" must be designed to control the emissions from industrial plants to alleviate their detrimental effect upon the air, land and water of the state. There will not be any increase in productive capacity

or prolongation of the useful life of any private industrial facility. Furthermore, it is likely that such emission controls will tend to be a burden on the efficiency of production processes. We reject the analogy as unpersuasive, and return to the specific constitutional violations suggested, i. e., that the financing procedure authorized constitutes a lending and pledging of the state's credit or a gift of public money to private interests.

■ This argument of relator flies in the face of § 260.065, captioned—notes and bonds not an indebtedness of the state, which reads: "Notes and bonds issued hereunder shall not constitute an indebtedness of the state and the state shall not be liable on such bonds and notes and such bonds and notes shall contain on the face thereof a statement to such effect." Furthermore, the notes and bonds are not issued by the state but by the Authority which by § 260.010 was "created and established" as a "body corporate and politic." The statutory scheme contemplates that a bond purchaser must look to that company purchasing or leasing a specific project or facility for payment of related principal and interest due on the bond. We quote, as one example, from an indenture heretofore issued by the Authority, to-wit: "This bond and the interest herein shall not be deemed to constitute a debt of the Authority or the State of Missouri or of any political subdivision thereof, or a pledge of the faith and credit of the Authority or of the State of Missouri or any political subdivision thereof, but this bond shall be payable solely from the receipts and revenues of the Authority from the projects pledged therefor and the Authority is not obligated to pay this bond or the interest hereon except from the receipts and revenues of the Authority from the projects pledged therefor and neither the faith and credit nor the taxing power, if any, of the Authority or of the State of Missouri or of any political subdivision thereof is pledged to the payment of principal or the interest on this bond."

However, it is true that the statutory provisions do not specifically require the precise limitation of liability, reference the Authority, which the covenant just quoted does contain. In other words, nowhere in the Act is respondent's liability limited as effectively as it is in those bond agreements now issued. Perhaps it would have been better if the Act were as restrictive and had expressly exculpated the Authority. It permits bond payments to be made out of "revenues" on hand, which might at any time include funds derived from more than one company. Any suggestion that funds from A company could be used to pay off obligations of B company does not create a constitutional question but is one of concern for the participating companies. It is inconceivable that any purchaser or lessee of a project facility would execute notes to the Authority and not provide for covenants that any payments made thereon would go to the retirement of the debt reflected in the particular bond issue and not be expended for the benefit of others. If, however, such would occur, the potential liability of the Authority would not be that of the state under the "separate entity" status created for it by the Act, which is a principle heretofore recognized by this court. State ex rel. State Highway Commission v. Bates, 296 S.W. 418 (Mo. banc 1927); Christeson v. State Highway Commission, 40 S.W.2d 615 (Mo.1931); Board of Public Buildings v. Crowe, 363 S.W.2d 598 (Mo. banc 1962); State ex rel. Curators of University of Missouri v. McReynolds, 354 Mo. 1199, 193 S.W.2d 611 (1946).

Relator lifts the word "appropriation" from the definition of revenues found in § 260.005(8), heretofore quoted, and anticipates some future legislative appropriation of tax revenues in connection with pollution control projects. We do not so construe the meaning of the word "appropriation" in the context it is apparently used in the statute. "Revenues" is defined, in part, as: ". . . other income received by the authority in connection with *any*

*project* and any . . . appropriation received by the authority with *respect thereto* . . ." (Emphasis added.) As respondent suggests, the proceeds received from a sale or lease of a project to a political subdivision or municipal corporation would be an "appropriation" of funds by such a public body. Resolution of questions which might arise if relator's fears are true can await such a possibility.

The constitutional challenge in Point I is ruled against relator because we do not construe the Act as permitting the granting of public money or lending of public credit or pledging the credit of the state for the benefit of private entities in violation of §§ 38(a), 39(1) or 39(2) of Art. III of the Missouri Constitution.

### Point II

Relator contends the Act is unconstitutional because it permits a political corporation or subdivision of the state to lend its credit or grant public money to and in aid of private entities in violation of §§ 23 and 25 of Art. VI of the Missouri Constitution.

The restrictions found in the latter sections are similar to those considered under Point I and have comparable implications. Arguments are made both pro and con as to the applicability of such restrictions on activities of the Authority. It is suggested that such constitutional restraints are designed solely to control the use of tax-raised revenues, which are truly "public money," and that the funds controlled by the Authority stem from private sources in contrast thereto; that the Authority is not a "political subdivision of the state" as that term is defined in § 15 of Art. X of the Missouri Constitution; and, that it is not a "political corporation" within the meaning of either § 23 or § 25 of Art. VI, because that term is used also in §§ 26(a) and 26(b) of the same article wherein the only logical connotation would point to those political corporations which enjoy the power of taxation. Although such arguments at first blush legally appear to be acceptable, we do not believe that the status and powers of the Authority need rest on such subtle distinctions.

It has long been recognized in Missouri, as relator acknowledges, that the constitutional prohibitions noted are not violated when money and property are expended or utilized to accomplish a "public purpose." Does the preservation of the state's natural resources have such a purpose? As was said in Laret Inv. Co. v. Dickmann, 345 Mo. 449, 134 S.W.2d 65 (1939) at l.c. 68: "To be guided solely by whether a given activity had, at some previous time, been recognized as a public purpose would make the law static. Such a standard would compel us to retain in the law, as appropriate for public expenditure, activities which have ceased to be of public concern; and would prevent us from adopting new public functions regardless of how essential to the public welfare they may have become by reason of changed conditions." State v. Land Clearance for Redevelopment Auth., 270 S.W.2d 44 (Mo. banc 1954); Land Clearance for Redevelopment Auth. v. City of St. Louis, 270 S.W.2d 58 (Mo. banc 1954). The question posed calls for an affirmative answer in light of it being common knowledge that the quality of our environment and the improvement thereof are among the foremost of today's public concerns, Annbar Associates v. West Side Development Corp., 397 S.W.2d 635 (Mo. banc 1965); and, we reject the conclusion reached by a minority of other state courts (hereinafter designated) which have declared that pollution control is solely a concern of private industry. Furthermore, determination of what constitutes a public purpose is primarily for the legislative department and it will not be overturned unless found to be arbitrary and unreasonable. The public purpose being apparent, it is unimportant that incidental benefits may accrue to private interests. State ex rel.

City of Boonville v. Hackman, 293 Mo. 313, 240 S.W. 135 (1922); Land Clearance cases (270 S.W.2d), supra.

Even if the activities of the Authority, in receipt and disposition of funds, were to be construed as a "lending of credit" or "grant of public money," the same would not be proscribed by §§ 23 and 25 of Art. VI of the Missouri Constitution in view of the obvious "public purpose."

## Point III

Relator contends the Act is unconstitutional because it permits the expenditure of public funds for private purposes in violation of §§ 1 and 3 of Art. X of the Missouri Constitution.

Both sections are directed toward and confined expressly to "tax revenues." The Authority does not levy or collect taxes and does not exercise any taxing power, and the point is ruled against relator.

## Point IV

Relator contends the Act violates § 40(28) of Art. III of the Missouri Constitution, which prohibits the passage of "any local or special law" granting to "any corporation, association or individual any special or exclusive right, privilege or immunity . . ."

We reject the argument and adopt the reasoning of respondent, to-wit: "The public purposes of the act may be extended to any public body, political subdivision, municipal corporation, private person or corporation . . . The act does not exclude any person or class of persons from its intended scope of activity. The law, being statewide in application, is neither local nor special . . . There is no limitation as to the entities which may contract with the authority for pollution control projects. No special privilege has been conferred upon one group to the exclusion of others."

## Point V

Relator contends the Act is unconstitutional because it is violative of § 37 of Art. III of the Missouri Constitution which places a "limitation on state debts and bond issues."

As previously noted, § 260.065 declares that "the state shall not be liable on such bonds and notes," so there is no possibility of state liability in contravention of § 37 of Art. III. Revenue bonds are involved here and are to be amortized out of the income of the project. As said in Board of Public Buildings v. Crowe, supra, 363 S. W.2d at 605: " 'Liability' here, as used in § 37, Art. 3 of our Constitution, means, in its true context, a contractual indebtedness, present or future, absolute or contingent, which will be or may be *liquidated by general taxation*." (Emphasis added.) The point is ruled against relator.

## Point VI

Relator contends the Act is unconstitutional because it permits the taxation of *exempt property* in violation of § 6 of Art. X of the Missouri Constitution, which provides, in so far as relevant here, that: "All property, real and personal, of the state, counties and other political subdivisions . . . shall be exempt from taxation . . ."

Section 260.035(9) provides that the Authority may "acquire . . . hold and dispose of *real and personal property*" and Section 260.075 declares that "projects . . . lease, financed or sold by the authority . . . shall be subject to all real and tangible personal property taxes . . ." By the Act, it is thus permissible for the Authority to hold title to pollution control equipment while the same is subject to taxation.

The point must be ruled against relator because the Authority is not the state, a county or other political subdivision. The

latter term is limited by § 6 of Art. X to those entities "having the power to tax," which the Authority does not have or claim; and property owned by it does not have any fixed constitutional tax exemption.

## Point VII

Relator contends the Act is unconstitutional because it fails to require that the revenue received or collected thereunder by the Authority go into the state treasury, in violation of § 36 of Art. III of the Missouri Constitution and because the method of withdrawals therefrom violates § 28 of Art. IV thereof.

No case is cited to support this argument, but we do mention two which call for rejection of the same: State v. Board of Regents, 305 Mo. 57, 264 S.W. 698 (Mo. banc 1924) and Board of Public Buildings v. Crowe, supra, 363 S.W.2d at l.c. 607.

## Point VIII

Relator contends that House Bill No. 1797 of the 77th General Assembly, Second Regular Session, is unconstitutional under the Missouri Constitution because it assigned the Authority, during reorganization of the executive department, to the department of consumer affairs, regulation and licensing (§ 36(a) Art. IV), although its functions are more germane to the department of natural resources (§ 47, Art. IV).

Even though a cursory reading of §§ 36(a) and 47 of Art. IV would indicate that the argument perhaps has merit, a question which we do not decide, the matter is one for executive and legislative concern and has no bearing whatever on the outcome of the instant case. The status and powers of the Authority do not rest on the validity of such a peripheral statute.

## Points IX and X

Both points relate again to House Bill No. 1797, with the relator in Point IX contending that said Bill contained plural subjects in violation of § 23 of Art. III of the Missouri Constitution, and in Point X that the same is confusing and fails to provide guidance to the Authority.

House Bill No. 1797 had one general subject, i. e., the "functional reorganization of the . . . executive branch." Nothing therein dealt with other matters in violation of the constitution. The alleged confusion suggested in Point X is not present absent the extremely strained interpretation thereof made by relator. Neither point has merit.

## Point XI

Relator's argument that it should not be barred by laches from maintaining this action, even though the Authority had initiated "projects" prior to the filing of the same, is now directed toward a moot issue in view of its challenge having been considered on the merits.

Although we have considered each of the specific points submitted in the written briefs, two further questions arise from portions of the arguments made therein.

First, it is argued that the tax exemption accorded to the interest income from revenue bonds and notes used to finance the "projects" will place the same, within the financial market, in competition with tax exempt municipal bonds to the detriment of the latter. Whether or not the prediction is well founded is not for this court to consider or decide. The propriety and wisdom of the Act is one of public policy for decision by the legislative department. Finding no constitutional restriction against the conclusion reached, it is not for this court to review the Act from a legislative standpoint.

Second, a challenge is made as to whether classification of the particular funds as tax exempt falls within the legitimate powers of the legislative department. In Barhorst v. City of St. Louis, 423 S.W. 2d 843 (Mo. banc 1967), this court at 846

quoted with approval the inclusive statement set forth in 84 C.J.S. Taxation § 36, as follows:

"As a general rule, within constitutional limitations, the state has power to classify persons or property for purposes of taxation, and the exercise of such power is not forbidden by the constitutional requirement that taxation be uniform and equal. So the legislature may arrange and divide the various subjects of taxation into distinct classes and impose different rates on the several classes, or tax one class to the exclusion of the others, without violating the requirement of equality and uniformity, and it may exercise wide discretion in selecting and classifying the subjects of taxation, provided the tax is uniform on all members of the same class, and provided the classification of the subjects of taxation is reasonable and provided the classification of the subjects of taxation, as has been held, is not arbitrary."

We do not believe that the classification made can be held to be arbitrary. See also: Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S.W. 196 (1918); Walters v. City of St. Louis, 364 Mo. 56, 259 S.W.2d 377 (1953); 508 Chestnut, Inc. v. City of St. Louis, 389 S.W.2d 823 (Mo. 1965); and Virden v. Schaffner, 496 S. W.2d 846 (Mo.1973).

We, as do the parties, recognize that ecology problems are national in scope and that other courts have considered comparable legislation. All of such cases, cited and otherwise, have been considered,[1] but it is not necessary to evaluate the persuasiveness of them and compare and distinguish the same in light of the particular legislative enactments, constitutional provisions or judicial precedents peculiar to each jurisdiction; consideration and disposition of each point presented has been consistent with guidelines long established in the law of this state. However, we are free to draw some solace from the fact the result reached herein is consistent with that of the majority of courts having considered related problems.

Judgment should be and it is hereby entered in favor of respondent.

All concur.

---

1. (a) Cases in accord with the result reached here: Knight v. West Alabama Environmental Improvement Authority, 287 Ala. 15, 246 So.2d 903 (1971); Industrial Development Authority of the County of Pinal v. Nelson, 109 Ariz. 368, 509 P.2d 705 (1973); State v. Putnam County Development Authority, 249 So.2d 6 (Fla.1971); Fickes v. Missoula County, 155 Mont. 258, 470 P.2d 287 (1970); State ex rel. Brennan v. Bowman, 512 P.2d 1321 (Nev.1973); Kennecott Copper Corp. v. Town of Hurley, 84 N.M. 743, 507 P.2d 1074 (1973); Harper v. Schooler, 285 S.C. 486, 189 S.E.2d 284 (1973); State ex rel. Hammermill Paper Co. v. La Plante, 58 Wis.2d 32, 205 N.W. 2d 784 (1973). Contra: Stanley v. Department of Conservation and Development, 284 N.C. 15, 199 S.E.2d 641 (1973); Port of Longview, Cowlitz County v. Taxpayers of Port of Longview, Cowlitz County, Wash., 527 P.2d 263 (1974).
(b) Representative cases on related subject matter in accord in principle with the disposition of the instant case: Ginsberg v. Denver, 164 Colo. 572, 436 P.2d 685 (1968); People ex rel. City of Salem v. McMackin, 53 Ill. 2d 347, 291 N.E.2d 807 (1972); Green v. City of Mount Pleasant, 256 Iowa 1184, 131 N.W.2d 5 (1964); Gaylord v. City Clerk, 378 Mich. 273, 144 N.W.2d 460 (1966); North Carolina State Ports Authority v. First Citizens Bank & Trust Co., 242 N.C. 416, 88 S.E.2d 109 (1955); Carruthers v. Port of Astoria, 249 Or. 329, 438 P.2d 725 (1968); Allen v. Tooele County, 21 Utah 2d 383, 445 P.2d 994 (1968); State ex rel. County Court v. Demus, 148 W.Va. 398, 135 S.E.2d 352 (1964); Uhls v. State ex rel. City of Cheyenne, 429 P.2d 74 (Wyo.1967). Contra: Village of Moyie Springs, Idaho v. Aurora Mfg. Co., 82 Idaho 337, 353 P.2d 767 (1960); State ex rel. Beck v. City of York, 164 Neb. 223, 82 N.W.2d 269 (1957); State ex rel. Saxbe v. Brand, 176 Ohio St. 44, 197 N.E.2d 328 (1964).