Honorable Catherine L. Hanaway Speaker of the Missouri House of Representatives Room 308, State Capitol Building 201 West Capitol Avenue Jefferson City, MO 65101
Honorable Peter D. Kinder President Pro Tem of the Missouri Senate Room 326, State Capitol Building 201 West Capitol Avenue Jefferson City, MO 65101
Dear Speaker Hanaway and President Pro Tem Kinder:
You have asked for this office's opinion on the following questions:
 Are the bonds to be issued, as contemplated by the Governor's hybrid tobacco securitization plan, general obligation bonds; and, does the Board of Public Buildings have authority to issue general obligation bonds on behalf of the State of Missouri without a vote of the people of the state?
In your request, you noted the enactment on June 7, 2002, of Senate Bill 1191, which has been codified at Sections 8.500, et seq. of the Missouri Revised Statutes.[1] That legislation created the Tobacco Settlement Financing Authority and authorized the Authority or the Board of Public Buildings to enter into certain transactions for the purpose of securitizing a portion of the state's share of tobacco litigation settlement proceeds. Your request also states, without citation or explanation, that "[t]he Governor has since requested that the General Assembly pass a special, supplemental appropriation in 2003 for tobacco securitization to authorize the Board of Public Buildings to sell bonds backed by the full faith and credit of the State of Missouri, commonly referred to as hybrid securitization."
The details of our analysis are set out below but, in brief, the Missouri Constitution prohibits the legislature from authorizing the issuance of general obligation bonds for the liability of the state without complying with the provisions of Article III, Section 37 of the Missouri Constitution, which require a vote of the people if the liability involved exceeds one million dollars. Nothing in Senate Bill 1191 contradicts that fundamental premise of Missouri law. But Senate Bill 1191 permits, and nothing in the Missouri Constitution prohibits, the Board of Public Buildings to issue bonds for tobacco securitization. That is because Senate Bill 1191 authorizes the Board of Public Buildings to issue bonds payable from the state's share of tobacco settlement proceeds, and from money appropriated by the General Assembly. Such bonds would not constitute general obligation bonds for the liability of the state and therefore no vote of the people would be necessary.
As indicated above, your questions raise the issue of the application of Article III, Section 37 of the Missouri Constitution to tobacco securitization. Article III, Section 37 provides:
 The general assembly shall have no power to contract or authorize the contracting of any liability of the state, or to issue bonds therefor, except (1) to refund outstanding bonds, the refunding bonds to mature not more than twenty-five years from date, (2) on the recommendation of the governor, for a temporary liability to be incurred by reason of unforeseen emergency or casual deficiency in revenue, in a sum not to exceed one million dollars for any one year and to be paid in not more that five years from its creation, and (3) when the liability exceeds one million dollars, the general assembly as on constitutional amendments, or the people by the initiative, may also submit a measure containing the amount, purpose and terms of the liability, and if the measure is approved by a majority of the qualified electors of the state voting thereon at the election, the liability may be incurred, and the bonds issued therefor must be retired serially and by installments within a period not exceeding twenty-five years from their date. Before any bonds are issued under this section the general assembly shall make adequate provision for the payment of the principal and interest, and may provide an annual tax on all taxable property in an amount sufficient for the purpose.
This provision clearly prohibits the General Assembly from authorizing the Board of Public Buildings to issue general obligation bonds for the liability of the state in excess of one million dollars unless the transaction was approved by a vote of the people in the manner that the provision describes.
It is evident that the General Assembly took Article III, Section 37 into account in enacting Senate Bill 1191. In addition to authorizing the Tobacco Settlement Financing Authority to issue bonds, that legislation also authorized the Board of Public Buildings to do so. Section 8.570. But the legislation makes clear that such bonds issued by the Board of Public Buildings must be paid from certain specified funds instead of being backed by the liability of the state. Specifically, Section 8.570 provides:
 The board of public buildings may issue bonds payable from not more than thirty percent of the state's share; provided, and the maximum amount of the state's share sold by the authority pursuant to section 8.535 and by the board of public buildings pursuant to this section shall collectively not exceed thirty percent of the state's share. The proceeds from bonds issued by the board of public buildings under this section may be deposited directly to the general revenue fund or deposited to the "Tobacco Bond Proceeds Fund" hereby created and then transferred to the general revenue fund. Repayment of any bonds issued pursuant to this section may be made solely from such portion of the state's share, an appropriation specifically authorized for such purpose or from any appropriation from the state's share for any other purpose.
(Emphasis added.)
Furthermore, Section 8.572 specifies:
 Any bonds issued by the board of public buildings pursuant to sections 8.570 to 8.590 shall not be deemed to be an indebtedness of the state of Missouri or of the board of public buildings, or of the individual members of the board of public buildings, and shall not be deemed to be an indebtedness within the meaning of any constitutional or statutory limitation upon the incurring of indebtedness.
(Emphasis added.)
As its terms indicate, Senate Bill 1191 plainly authorizes the Board of Public Buildings to issue bonds for the purpose of tobacco securitization without having those bonds constitute general obligation bonds for the liability of the state, and thus without implicating the provisions of Article III, Section 37. Issuing bonds that are to be paid from a particular source of funds, including funds appropriated for that purpose, does not create a contract or bond for the liability of the state. Board of Public Buildings v. Crowe, 363 S.W.2d 598, 604-605
(Mo.banc 1962) (transaction did not constitute issuance of bonds for "liability of the state" where there was no obligation to satisfy a debt through general taxation, the payment of the bonds was contingent on the appropriation by the legislature of moneys that would be used to pay the bonds).[2]
Indeed, as the case law cited above suggests and as other transactions commonly reflect,[3] a state entity can issue bonds that are to be paid from funds appropriated for that purpose and the payment of the bonds in each year of their term is contingent on the legislature's appropriating funds for each year's payment. Such transactions can also involve an agreement by a state official annually to seek an appropriation from the General Assembly for the purpose of making each bond payment that comes due. Such an obligation to request an appropriation does not implicate Article III, Section 37 because requesting an appropriation does not incur any obligation to pay money, through taxation or otherwise. SeeCrowe, 363 S.W.2d at 604-05.
Accordingly, among other permissible structures for tobacco securitization, the Board of Public Buildings could issue bonds pursuant to the authority granted by the legislature in Section 8.570. Those bonds could be paid from the state's share of the tobacco litigation settlement and, in the event that those funds were not sufficient to pay the bonds in a given year, from an appropriation of other funds made by the legislature for the purpose of making that year's payment, such as funds appropriated in a supplemental appropriation this year. The transaction could include an agreement by an appropriate state official to request annually an appropriation for that purpose, but payment to make up for any shortfall in funds from the state's share from year to year would remain contingent on such an appropriation in fact being made.
 CONCLUSION
The Missouri Constitution prohibits the Board of Public Buildings from issuing general obligation bonds without complying with the provisions of Article III, Section 37 of the Missouri Constitution, which require a vote of the people if the liability involved exceeds one million dollars. Indeed, Sections 8.500, et seq., do not purport to authorize the Board of Public Buildings to issue a general obligation bond for the liability of the state. But, the Board of Public Buildings may issue bonds payable from the state's share of tobacco settlement proceeds, and from money appropriated by the General Assembly, without having those bonds constitute general obligation bonds for the liability of the state and thus without making any vote of the people necessary.
Very truly yours,
 JEREMIAH W. (JAY) NIXON Attorney General
[1] All statutory references are to the 2002 Cumulative Supplement of the Missouri Revised Statutes.
[2] See also State ex rel. Farmer's Elec. Coop., Inc. v. State Envtl.Improvement Auth., 518 S.W.2d 68, 75 (no state liability within meaning of Article III, Section 37 where statute authorizing bonds stated that state would not be liable).
[3] See, e.g., Project Agreement, Sections 1.3 and 4.2, Cooperative Agreement, Article II, and Opinions of Counsel contained in closing documents for Agreements Concerning the Design, Construction and Financing of a Multi-Purpose Convention, Exhibition and Sports Facility (the "Project") Adjoining the A.J. Cervantes Convention Center (the "Convention Center") and Operation of the Convention Center and the Project.