**DIVISION 1287, AMALGAMATED TRANSIT UNION, AFL–CIO,**
**Plaintiff,**

v.

**KANSAS CITY AREA TRANSPORTATION AUTHORITY, Defendant.**

No. 77–0663–CV–W–2.

United States District Court,
W. D. Missouri, W. D.

Feb. 21, 1980.

---

Michael D. Gordon, of Jolley, Moran, Walsh, Hager & Gordon, Kansas City, Mo., for plaintiff.

Norman O. Sanders, of Sheridan, Sanders & Simpson, Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND FINAL ORDER

COLLINSON, District Judge.

In 1965, the States of Missouri and Kansas created the Kansas City Area Transportation Authority (hereinafter KCATA) through an agreement that was eventually approved by the State of Missouri, the State of Kansas, and the United States. Prior to the existence of the KCATA, ten separate bus companies, including Kansas City Transit, Inc., provided public transportation for the metropolitan Kansas City area. The States of Missouri and Kansas collaborated to create the KCATA for the purpose of providing a unified urban transportation system for the metropolitan Kansas City area. One impetus for the creation of the KCATA was the passage, by Congress, in 1964, of the Urban Mass Transportation Act, 49 U.S.C. § 1601 *et seq.* (hereinafter UMTA). Through UMTA, Congress authorized the Secretary of Transportation to finance, with federal loans and grants, the creation and operation of public entities, like KCATA, that would operate urban transportation systems in cities throughout the United States. Since the date of its creation, the KCATA has recognized Division 1287, Amalgamated Transit Union, AFL–CIO (hereinafter Local 1287) as the collective bargaining representative for some, but not all, of KCATA's employees.

This action arose over a dispute between Local 1287 and the KCATA concerning certain benefits for retired and disabled bus line employees. During negotiations for their 1975 contract, Local 1287 and KCATA agreed, among other things, that, under the 1975 contract, KCATA would increase, by 10%, the pension benefits of certain retired and disabled bus line employees. Local 1287 and KCATA were unable to agree, however, on the union's request that the 1975 contract provide for increased hospital and medical benefits for certain retirees. Local 1287 and KCATA agreed to submit that dispute to a board of arbitration for final and binding resolution. On October 15, 1976, the board of arbitration issued a decision in which it awarded, for the 1975 contract period, increased hospital and medical benefits for certain retirees. The KCATA has refused, however, to pay either the 10% increase in pension benefits to which it agreed in the 1975 contract or the increased hospital and medical benefits awarded by the board of arbitration on October 15, 1976.

On September 7, 1977, Local 1287 filed this action against the KCATA seeking, among other things, a judgment for the unpaid pension benefits described above. On October 25, 1977, the KCATA filed its answer and a counterclaim for a declaratory judgment. As modified by this Court's Order of April 7, 1978, the KCATA's counterclaim requests that this Court declare that both the KCATA's agreement to in-

crease pension benefits by 10% and the arbitration board decision awarding the increased medical benefits for pensioners are void.

After extensive discovery on the merits of this action, the parties entered into a joint stipulation of facts, filed with this Court on December 28, 1978. Both parties have also stipulated that they do not desire to present any other facts to this Court concerning this action. This Court has carefully reviewed the parties' joint stipulations, which are hereby incorporated into this opinion, and finds them sufficient for this Court to render judgment on the parties' opposing claims. After filing their joint stipulations, the parties filed, on February 28, 1979, briefs in support of their respective positions. On March 19, 1979, the parties filed briefs in response to the briefs filed on February 28, 1979. Since all material facts have been stipulated by the parties, and since the parties have been presented a full opportunity to file briefs on the legal questions presented, the cause is ready for decision.

Local 1287 alleges three different bases for this Court's jurisdiction over its claims. Although the KCATA concedes that jurisdiction is proper under one of the three bases alleged, this Court will, because of the importance of this question in determining the law that will be applied to the merits of the action, address the basis upon which this Court has determined that it may exercise jurisdiction over this dispute.

■ Plaintiff first contends that this Court has jurisdiction over its claims under the Labor Management Relations Act, particularly 29 U.S.C. § 185 (1976). That section provides, in pertinent part:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1976). This Court is not convinced that jurisdiction over this dispute is proper under § 185(a). Although this action does, at least in part, concern the breach of a contract between Local 1287 and the KCATA, this Court is *not* convinced that the KCATA is an employer as that term is defined in 29 U.S.C. § 152(2) (1976). That section provides that "[t]he term 'employer' . . . shall not include . . any State or political subdivision thereof . . . ." 29 U.S.C. § 152(2) (1976). Article III of the statutes creating the KCATA, Mo.Rev.Stat. § 238.010 et seq. and Kan. Stat.Ann. § 12–2524, states that the KCATA is "a political subdivision of the States of Missouri and Kansas." Based upon that characterization in the statutes, this Court must hold that the KCATA is a political subdivision of a State and is *not*, therefore, an "employer" within the meaning of the Labor Management Relations Act. *Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355, 1358 (3d Cir. 1976). Thus, since the KCATA is not an employer within the meaning of the Labor Management Relations Act, this Court does not have jurisdiction, under 29 U.S.C. § 185(a), over a contract dispute between the KCATA and a labor organization like Local 1287.

■ Second, Local 1287 alleges that 9 U.S.C. § 9 (1976) is an independent jurisdictional basis for this action. This Court disagrees. That section creates jurisdiction in the federal courts only, "If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to the arbitration . . . ." 9 U.S.C. § 9 (1976). This Court has reviewed the various arbitration agreements entered into between the KCATA and Local 1287, but has found *no* agreement that a judgment on an arbitration award may be entered in *any* court. Since such an agreement is a prerequisite to jurisdiction under 9 U.S.C. § 9, and since that prerequisite is not present in this case, this Court must hold that jurisdiction over this action may not be premised on 9 U.S.C. § 9 (1976).

Plaintiff also alleges that this Court has jurisdiction over its claim under the provisions of 28 U.S.C. § 1331 (1976). That section provides, in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

28 U.S.C. § 1331(a) (1976). There is no dispute that this action meets the $10,000.00 amount in controversy requirement of § 1331(a). There remains, however, the question whether this action "arises under the Constitution, laws, or treaties of the United States."

Plaintiff contends that this action arises under § 13(c) of the UMTA, 49 U.S.C. § 1609 (1976) (hereinafter § 13(c)). That subsection provides:

(c) It shall be a condition of any assistance under section 1602 of this title that fair and equitable arrangements are made, as determined by the Secretary of Labor, to protect the interests of employees affected by such assistance. Such protective arrangements shall include, without being limited to, such provisions as may be necessary for (1) the preservation of rights, privileges, and benefits (including continuation of pension rights and benefits) under existing collective bargaining agreements or otherwise; (2) the continuation of collective bargaining rights; (3) the protection of individual employees against a worsening of their positions with respect to their employment; (4) assurances of employment to employees of acquired mass transportation systems and priority of reemployment of employees terminated or laid off; and (5) paid training or retraining programs. Such arrangements shall include provisions protecting individual employees against a worsening of their positions with respect to their employment which

shall in no event provide benefits less than those established pursuant to section 5(2)(f) of this title. The contract for the granting of any such assistance shall specify the terms and conditions of the protective arrangements.

Pursuant to § 13(c), the parties to this action entered into the following agreement, which was in effect during negotiations for their 1975 contract, to submit to binding interest arbitration if collective bargaining failed to produce a contract:

In the case of any labor dispute (except as defined in paragraph (11) hereof) where collective bargaining does not result in agreement after all reasonable efforts to agree in good faith, the same may be submitted at the written request of either party to a board of arbitration composed of three (3) persons as hereinafter provided, one to be chosen by the Authority, one to be chosen by the Union, and the two thus selected to select a third disinterested arbitrator; the findings of the majority of said board of arbitration shall be final and binding on the parties thereto; all contract conditions shall remain undisturbed and there shall be no lockouts, strikes, walkouts or interference with or interruption of service during the arbitration proceedings.

Each party shall appoint its arbitrator within five (5) days after notice of submission to arbitration has been given. If the two arbitrators selected by the parties are unable to agree upon the selection of the third arbitrator within five (5) days from the date of appointment of the second-named arbitrator, then either arbitrator may request the American Arbitration Association to furnish a list of seven (7) members of the National Academy of Arbitrators from which the third arbitrator shall be selected. The arbitrators appointed by the parties shall, within five (5) days after the receipt of such list determine by lot the order of elimination, and thereafter each shall, in that order, alternately eliminate one name until only one name remains. The remaining person on the list shall be the third arbitra-

tor. In each instance, the foregoing time limits are exclusive of Saturday, Sunday and holidays. Such time limits may be extended by mutual agreement of the parties in writing.

The salaries and expenses of the third arbitrator shall be borne equally by the parties to the proceeding and all other expenses shall be paid by the party incurring them.

The term "labor dispute" shall be broadly construed and shall include any controversy concerning wages, salaries, working conditions or benefits, including health and welfare, sick leave, insurance or pension or retirement provisions, the making or maintenance of collective bargaining agreements, the terms to be included in such agreements, the interpretation or application of such agreements, the adjustments of grievances, any claim, difference, or controversy arising out of or by virtue of any of the provisions of this agreement for the protection of employees covered by this agreement affected by the Project.

The arbitration board shall make every reasonable effort to render its decision within thirty (30) days from the date of the completion of the hearings in the proceedings, or within such longer period as the parties to the proceedings may mutually agree upon in writing. The decision of the arbitration board shall be in writing, signed by a majority of the members thereof, and original counterparts thereof shall be filed with the Authority and the Union.

Nothing in this paragraph (17) shall be construed to enlarge or limit the right of either party to utilize, upon the expiration of any collective bargaining agreement, any economic measures that are consistent or not in conflict with applicable law.

Plaintiff's position, as this Court understands it, is that, since the action is based upon a breach of the parties' § 13(c) agreement, the action arises under § 13(c). The precise question before this Court is, therefore, whether an action to enforce an arbitration award or a collective bargaining agreement, made pursuant to procedures required by a § 13(c) agreement, is an action arising under the laws of the United States. Although there are no reported decisions on that question, there are reported decisions on related questions, including the Eighth Circuit's recent decision concerning another dispute between these parties. In *Division 1287, Amalgamated Transit Union, AFL–CIO v. Kansas City Area Transportation Authority*, 582 F.2d 444 (8th Cir. 1978) (hereinafter *KCATA I* ), one question before the Court of Appeals was whether an action by Local 1287 to compel the KCATA to submit a dispute over their 1977 contract to binding arbitration was a suit arising under § 13(c). In holding that the suit did arise under § 13(c) and, thus, under the laws of the United States, the Court of Appeals reasoned that, since KCATA's contractual promise to submit to binding arbitration when collective bargaining failed to produce an agreement was a promise required by § 13(c) of the UMTA, a suit to compel KCATA to submit to such arbitration is a suit arising out of and based primarily upon § 13(c). The Court of Appeals stated, "Although the question is not free from doubt, we now hold that a controversy between a public transit agency and a labor union involving a claim of breach of a § 13(c) agreement is a controversy that arises under the laws of the United States." *KCATA I*, 582 F.2d 444, 450 (8th Cir. 1978). The Court of Appeals went on to hold that the parties' § 13(c) agreement required them to submit to binding interest arbitration:

> [W]hen a state or a combination of states forms a public transit agency for the express purpose of obtaining federal money to enable it to take over the business of a private transit company, and where the agency in order to obtain the money enters into a § 13(c) agreement that calls for interest arbitration, the obligation to arbitrate is binding on the agency, regardless of general state law or policy.

*KCATA I*, 582 F.2d 444, 452–453 (8th Cir. 1978).

862

KCATA I makes clear that the question whether the parties to a § 13(c) agreement must submit to binding interest arbitration is a question arising under the laws of the United States. This Court takes the next logical step beyond KCATA I by holding that the question of the validity of an arbitration award or a collective bargaining agreement rendered pursuant to procedures required by a § 13(c) agreement is also a question arising under the laws of the United States. This holding is supported by the Eighth Circuit's clear language in KCATA I and by the cases cited by the Court of Appeals in that opinion. First, as discussed above, the Court of Appeals specifically stated in KCATA I, "[W]e now hold that a controversy between a public transit agency and a labor union involving a claim of breach of a § 13(c) agreement is a controversy that arises under the laws of the United States." KCATA I, 582 F.2d 444, 450 (8th Cir. 1978). In the portion of the parties' § 13(c) agreement quoted above, the parties agreed that the arbitrators' decision would be final and binding. The parties also agreed, in their § 13(c) agreement, to bargain over certain subjects. The KCATA's present refusal to comply with the arbitrators' decision and the 1975 collective bargaining agreement must, therefore, be construed as a breach of the parties' § 13(c) agreement. Thus, like the controversy in KCATA I, since the controversy in this case involves a claim of a breach of a § 13(c) agreement, the case must be one arising under the laws of the United States.

Second, that conclusion is supported by International Association of Machinists, AFL–CIO v. Central Airlines, Inc., 372 U.S. 682, 83 S.Ct. 956, 10 L.Ed.2d 67 (1963) (hereinafter Central Airlines), the case upon which the Eighth Circuit relied in concluding that a suit to compel arbitration required by a § 13(c) agreement arises under the laws of the United States. KCATA I, 582 F.2d 444, 450 (8th Cir. 1978). The question presented in Central Airlines was whether a suit to enforce an award of an airline board of adjustment arose out of the Railway Labor Act. In answering that question in the affirmative, the Court stated:

> The contract of the parties here was executed under § 204 and declares a system board award to be final, binding, and conclusive. The claim stated in the complaint is based upon the award and demands that it be enforced. Whether Central must comply with the award or whether, instead, it is impeachable, are questions controlled by federal law and are to be answered with due regard for the statutory scheme and purpose. To the extent that the contract imposes a duty consistent with the Act to comply with the awards, that duty is a federal requirement. If Central must comply, it is because federal law requires its compliance.

Central Airlines, 372 U.S. 682, 695, 83 S.Ct. 956, 963, 10 L.Ed.2d 67 (1963). The principle recognized in Central Airlines, that an action to enforce a contract mandated by federal statute arises under federal law, Local Division 519, Amalgamated Transit Union, AFL–CIO v. LaCrosse Municipal Transit Utility, et al., 585 F.2d 1340, 1347 (7th Cir. 1978) (hereinafter LaCrosse), controls the question whether this case arises under § 13(c). KCATA I, 582 F.2d 444, 450 (1978). Accordingly, this Court concludes that this action arises under § 13(c) of the UMTA and, therefore, that this Court has jurisdiction over plaintiff's claims under 28 U.S.C. § 1331(a) (1976). Since defendant's counterclaim for declaratory judgment requires decision of the same questions presented by plaintiff's claims, this Court also has jurisdiction over defendant's counterclaim under 28 U.S.C. § 1331(c) (1976).

The major question in this action is whether certain provisions of the Missouri Constitution invalidate both the KCATA's agreement to increase certain pension benefits and the board of arbitration's award of increased health and medical benefits to certain pensioners. The parties take diametric positions on this question. The KCATA argues that the Missouri Supreme Court's decision in Police Retirement System v. Kansas City, 529 S.W.2d 388 (Mo.

1975) (hereinafter *Police Retirement System*) bars the KCATA from paying these increased pension benefits. In that case, the Missouri Supreme Court held that R.S.Mo. § 86.441, to the extent that it permitted the payment of increased pension benefits to retired police officers, violated Article III § 39(3) and/or Article VI § 25 of the Missouri Constitution. *Police Retirement System*, 529 S.W.2d 388, 393 (Mo. 1975). Those two sections of the Missouri Constitution provide: Article III § 39(3):

> The general assembly shall not have power:
>
>> To grant or to authorize any county or municipal authority to grant any extra compensation, fee or allowance to a public officer, agent, servant or contractor after service has been rendered or a contract has been entered into and performed in whole or in part;

Article VI § 25:

> No county, city or other political corporation or subdivision of the state shall be authorized to lend its credit or grant public money or property to any private individual, association or corporation except as provided in Article VI, Section 23(a) and except that the general assembly may authorize any county, city or other political corporation or subdivision to provide for the retirement or pensioning of its officers and employees and the widows and children of deceased officers and employees and may also authorize payments from any public funds into a fund or funds for paying benefits upon retirement, disability or death to persons employed and paid out of any public fund for educational services and to their beneficiaries or estates; and except, also, that any county of the first class is authorized to provide for the creation and establishment of death benefits, pension and retirement plans for all its salaried employees, and the widows and minor children of such deceased employees.

The KCATA's position on this point, as this Court understands it, is that, to the extent that R.S.Mo. § 238.100 authorizes the KCATA to bargain concerning, or to submit to binding arbitration, a union request for increased pension benefits for already retired bus line employees, § 238.100 violates Article III § 39(3) and/or Article VI § 25 of the Missouri Constitution. In opposition to that position, Local 1287 argues two points: first, that federal law, not State law, controls this question; and second, that, even if applicable, Missouri law does not bar the benefits in dispute in this case. This Court agrees with Local 1287's arguments.

■ This Court holds, without hesitation, that the contracts between the parties to this dispute must be interpreted and enforced under federal law, not the laws of the State of Missouri. The various contracts between the KCATA and Local 1287 were executed pursuant to § 13(c) of the UMTA. If those contracts are to serve the functions clearly indicated in both § 13(c) and its legislative history, the interpretation of those contracts cannot be abandoned to the vagaries of State law. *Central Airlines*, 372 U.S. 682, 691–695, 83 S.Ct. 956, 961–963, 10 L.Ed.2d 67 (1963). The Court of Appeals reached this same conclusion in *KCATA I.* In that case, one point argued by the KCATA was that the binding interest arbitration agreement included in the parties' § 13(c) agreement was invalid under Missouri law. *KCATA I*, 582 F.2d 444, 452 (8th Cir. 1978). The Court of Appeals rejected the KCATA's argument that Missouri law controls the validity of the parties' § 13(c) agreement:

> The Authority contends here that any obligation on its part [to] engage in binding interest arbitration would amount to an unlawful delegation of the powers and authority that have been conferred upon it as a public body. We do not think that this argument can be sustained in the context of the present case.
>
> As is well known, the federal policy in favor of arbitration as a means of settling labor disputes is a very strong one. In addition to the cases last cited, *see* the familiar *"Steel Workers Trilogy"* of cases beginning with *United Steel Workers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *see also General Electric Co. v. Local 205,*

*United Electrical, Radio & Machine Workers of America,* 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957), and *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957).

That policy would appear to be particularly applicable in the vital area of urban mass transit where strikes of workers are in the highest degree undesirable from the standpoint of the public.

We recognize that under the laws of some states employees of public agencies are not accorded collective bargaining rights nor do they enjoy the benefits of such bargaining, including arbitration. We think, however, that when a state or a combination of states forms a public transit agency for the express purpose of obtaining federal money to enable it to take over the business of a private transit company, and where the agency in order to obtain the money enters into a § 13(c) agreement that calls for interest arbitration, the obligation to arbitrate is binding on the agency, regardless of general state law or policy.

*KCATA I,* 582 F.2d 444, 452–453 (8th Cir. 1978). In light of the Court of Appeals' holding in *KCATA,I,* this Court must hold that Missouri law does not apply to either the § 13(c) agreement between the KCATA and Local 1287 or the collective bargaining agreements entered into pursuant to the § 13(c) agreement.

■ The § 13(c) agreement between the parties here is virtually identical to the § 13(c) agreement construed by the Court of Appeals in *KCATA I.* The § 13(c) agreement in effect at the time this dispute arose requires collective bargaining on certain subjects, including health and welfare benefits and pension and retirement allowances. That agreement also requires binding interest arbitration if collective bargaining fails to produce a contract. Under the holding of *KCATA I* the KCATA's obligations under that § 13(c) agreement are binding on it "regardless of general state law or policy." *KCATA I,* 582 F.2d 444, 453 (8th Cir. 1978).

■ In addition, this Court is convinced, and accordingly holds, that even if Missouri law were applicable to this controversy, the pension benefits in dispute here are not barred by the Missouri Constitution. In *State ex rel. Farmers Electric Cooperative, Inc. v. State Environmental Improvement Authority,* 518 S.W.2d 68 (Mo.1975) (hereinafter *Farmers Electric* ), the Missouri Supreme Court set forth the applicable principles for construction of the Missouri Constitution:

> The [Missouri] state constitution, unlike the federal constitution, is not a grant of power, but as to legislative power, it is only a limitation; and, therefore, except for the restrictions imposed by the state constitution, the power of the state legislature is unlimited and practically absolute. *Kansas City v. Fishman,* 362 Mo. 352, 241 S.W.2d 377 (1951). An act of the legislature is presumed to be valid and will not be declared unconstitutional unless it clearly and undoubtedly contravenes some constitutional provision. *State ex rel. Eagleton v. McQueen,* 378 S.W.2d 449 (Mo. banc 1964). Legislative enactments should be recognized and enforced by the courts as embodying the will of the people unless they are plainly and palpably a violation of the fundamental law of the constitution. *Borden Company v. Thomason,* 353 S.W.2d 735 (Mo. banc 1962).

*Farmers Electric,* 518 S.W.2d 68, 72 (Mo. 1975). Applying those principles in this case, this Court cannot hold that R.S.Mo. § 238.100 "clearly and undoubtedly contravenes some constitutional provision." On the contrary, Article VI § 25 of the Missouri Constitution, as set forth above, appears to specifically authorize laws like § 238.100. Moreover, in *Farmers Electric, supra,* the Missouri Supreme Court held that Missouri Constitutional spending limitations are not violated by expenditures for public purposes:

> It has long been recognized in Missouri, as relator acknowledges, that the constitutional prohibitions noted are not violated when money and property are expended or utilized to accomplish a "public pur-

pose." Does the preservation of the state's natural resources have such a purpose? As was said in *Laret Inv. Co. v. Dickmann*, 345 Mo. 449, 134 S.W.2d 65 (1939) at l. c. 68: "To be guided solely by whether a given activity had, at some previous time, been recognized as a public purpose would make the law static. Such a standard would compel us to retain in the law, as appropriate for public expenditure, activities which have ceased to be of public concern; and would prevent us from adopting new public functions regardless of how essential to the public welfare they may have become by reason of changed conditions." *State v. Land Clearance for Redevelopment Auth.*, 270 S.W.2d 44 (Mo. banc 1954); *Land Clearance for Redevelopment Auth. v. City of St. Louis*, 270 S.W.2d 58 (Mo. banc 1954). *Farmers Electric*, 518 S.W.2d 68, 74 (Mo. 1975). A review of § 238.100 and its legislative history compels the conclusion that its major purpose was to provide that KCATA with the authority to enter whatever contract the Secretary of Labor might require, under § 13(c), as a prerequisite to obtaining UMTA federal grants. This Court holds, therefore, that any money authorized or spent pursuant to § 238.100 is utilized for a public purpose; the purpose of complying with federal prerequisites to obtaining massive federal grants, which will permit the operation of a public urban transportation system in the metropolitan Kansas City area. The Missouri Supreme Court's decision in *Police Retirement System*, 529 S.W.2d 388 (Mo.1975), does not compel a contrary conclusion. That decision concerned only the constitutional validity of R.S.Mo. § 86.441. That statute, § 86.441, is not involved, in any way, in this case. In addition, there was no analysis in *Police Retirement System* of the purpose for which the challenged expenditures were made.

Accordingly, since this Court concludes that the Missouri Constitution does *not* interfere with the payment of the pension benefits in dispute in this case, and since this Court finds no ambiguity in the clear terms of either the 1975 collective bargaining agreement or the October 15, 1976 board of arbitration award, this Court holds: first, that the provision in the 1975 collective bargaining agreement between KCATA and Local 1287 for a 10% increase in pension benefits for previously retired employees is valid, binding, and will be enforced; and second, that the October 16, 1976 board of arbitration award of increased medical benefits for previously retired employees is final, binding, and will be enforced.

■ Finally, Local 1287 requests an award of the attorneys' fees and expenses that it has incurred in this action. That request will be denied. The general rule concerning an award of attorneys' fees and expenses is "that absent statute or enforceable contract, litigants pay their own attorneys' fees." *Alyeska Pipeline Co. v. Wilderness Society, et al.*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (hereinafter *Alyeska Pipeline Co.*). This Court recognizes that there exists an exception to that general rule, "when the losing party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Alyeska Pipeline Co.*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *United Steelworkers of America, AFL–CIO v. Butler Mfg. Co.*, 439 F.2d 1110, 1112–13 (8th Cir. 1971).

Based upon the parties' stipulations and the record before this Court, this Court finds that the KCATA did not act in bad faith, vexatiously, wantonly, or for oppressive reasons in refusing to pay the pension benefits in dispute in this case. The KCATA refused to pay the benefits for the sole reason that the Missouri Supreme Court's decision in *Police Retirement System*, 529 S.W.2d 388 (Mo.1975), cast serious doubt on the Constitutional validity of those pension benefits. The KCATA filed its counterclaim in this action for the purpose of resolving the doubt created by *Police Retirement System*. On these facts, and in light of the legal standard set forth in *Alyeska Pipeline Co.*, Local 1287's request for attorneys' fees and expenses will be denied.

For the reasons set forth above, it is

ORDERED that judgment in this action in favor of Local 1287 and against the KCATA, as set forth above, be, and hereby is, granted; and it is

ORDERED that, within 15 days of the date of this Order, plaintiff shall file a proposed form of final judgment in accordance with this Court's opinion set forth above.