Dear Dr. Antonio:
This opinion is in response to your questions:
 Are the fees that are received by the Missouri Housing Development Commission required to be deposited in the state treasury?
 Is the expenditure of the fees collected by the Missouri Housing Development Commission subject to control by the legislature through the appropriation process?
These questions comprised No. 5 of your request of an opinion from this office. The other four questions of your request were separated for answer in a separate opinion assigned number 176.
You outlined the facts giving rise to your question in the following manner:
 I am informed that the Missouri Housing Development Commission does not deposit the money it collects in fees into the state treasury. I am informed that the Missouri Housing Development Commission pays most of its operating costs (non-payroll costs) directly from its own accounts without depositing the money in the state treasury. Thus, these expenditures are never processed through the state accounting system. The legislature does appropriate money to the Missouri Housing Development Commission, but since the commission does not deposit its money in the state treasury and its expenditures are not processed through the state accounting system, the Division of budget and Planning does not show that any money from the commission's appropriation has been spent. Consequently, the commission spends its money as it so chooses, sometimes exceeding the amount specified by the legislature in the appropriation to MHDC for non-payroll expenses.
The General Assembly created the Missouri Housing Development Commission (MHDC) as "a governmental instrumentality of the state of Missouri . . . which shall constitute a body corporate and politic." Section 215.020.1, RSMo 1978. Appendix B(1) § 3, RSMo 1978, provides that MHDC shall be assigned to the Department of Consumer Affairs, Regulation and Licensing "but shall remain a governmental instrumentality of the State of Missouri and shall constitute a body corporate and politic."
The General Assembly has authorized MHDC to collect fees in three separate sections of Chapter 215. Section 215.030(8) empowers MHDC:
 To collect reasonable fees and charges in connection with making and servicing its loans, notes, bonds, obligations, commitments, and other evidences of indebtedness, and in connection with providing technical, consultative and project assistant services. Such fees and charges shall be limited to the amounts required to pay the costs of the commission, including operating and administrative expenses, and reasonable allowances for losses which may be incurred . . . .
Section 215.040 mandates that MHDC:
 [C]harge a reasonable fee on all loans not federally insured to insure said loans. The proceeds of said fees shall be deposited in a separate fund to be known as the `Housing Insured Loan Fund'. This fund shall be deposited when received in a bank approved for deposit of state funds. No moneys shall be withdrawn from the fund except to be used for the purchase of mortgage insurance or to pay for any losses on said loans.
Section 215.130 authorizes MHDC, when issuing any notes or bonds, to pledge "all or any part of any fees and charges made or received by the commission." Section 215.130 does not designate the source of fees to which it refers. While these are the only references in Chapter 215 to fees, there are numerous other references to income and its sources.
The issue is whether or not such fees and other revenues of MHDC are subject to the state constitutional provisions of Art. III, § 36 and Art. IV, § 15 which mandate that all revenue collected and moneys received by the state from any source whatsoever must be deposited in the state treasury. Specifically, Art. III, § 36 provides in pertinent part:
 All revenue collected and money received by the state shall go into the treasury and the general assembly shall have no power to divert the same or to permit the withdrawal of money from the treasury, except in pursuance of appropriations made by law.
Article IV, § 15 outlines the duties of the state treasurer and provides in pertinent part:
 All revenue collected and moneys received by the state from any source whatsoever shall go promptly into the state treasury, and all interest, income and returns therefrom shall belong to the state. Immediately on receipt thereof the state treasurer shall deposit all moneys in the state treasury to the credit of the state in banking institutions selected by him and approved by the governor and state auditor, and he shall hold them for the benefit of the respective funds to which they belong and disburse them as provided by law.
In addition to these constitutional provisions, § 33.080, RSMo 1978, provides in pertinent part:
 All fees, funds and moneys from whatsoever source received by any department, board, bureau, commission, institution, official or agency of the state government by virtue of any law or rule or regulation made in accordance with any law, shall, by the official authorized to receive same, and at stated intervals of not more than thirty days, be placed in the state treasury to the credit of the particular purpose or fund for which collected, and shall be subject to appropriation by the general assembly for the particular purpose or fund for which collected during the biennium in which collected and appropriated.
Thus, the key to determining whether or not the fees and other revenues collected by MHDC must be deposited in the state treasury pursuant to these constitutional and statutory provisions is a determination of whether or not MHDC is "the state", as set out in the constitutional provisions, or is an agency of the state, as set out in § 33.080. We are of the opinion that MHDC is not an agency within the purview of § 33.080, and its fees and other revenues are not "revenue collected and money received" as that term is used in Art. III, § 36 and Art. IV, § 15.
Chapter 215 read in its entirety, makes it clear that the legislature intended MHDC to be a self-sufficient, independent instrumentality, invested with specific powers and authority to perform a specific function. The fees called for in § 215.030(8) are to "pay the costs of the commission, including operating and administrative expenses, and reasonable allowances for losses which may be incurred . . . ." Furthermore, § 215.030(9) authorized MHDC to invest any funds not required for immediate disbursement. This provision clearly negates any contention that such funds are to be invested by the state treasurer as state moneys pursuant to Art. IV, § 15.
The other 23 powers granted MHDC in § 215.030 are to permit MHDC to act with the flexibility and continuity required for successfully providing low-income or moderate-income housing in Missouri — a flexibility and continuity which the state could not provide itself. Thus, the legislature chose to create a necessary instrumentality. Among other things, the statute authorizes MHDC to accept gifts, § 215.030(6); to make and execute contracts and other instruments, § 215.030(7); to sue and be sued, § 215.030(10); to adopt an official seal, § 215.030(11); to enter into agreements or other transactions with any federal or state agency, any person and any domestic or foreign partnership, corporation, association or organization, § 215.030(14); to acquire real property in its own name and to sell it to a buyer, § 215.030(15); and to borrow money to carry out its purposes, § 215.030(20).
These provisions, coupled with the provisions creating MHDC as a governmental instrumentality constituting a body corporate and politic, make it clear that the legislature intended MHDC to be an entity distinct from the state, established for the specific purpose of providing low-income or moderate-income housing to residents of Missouri. Although MHDC represents the state in the performance of its duties, and, in fact, has three elected state officials among its commissioners, it is but an instrumentality through which the state provides a service it could not otherwise provide. The powers granted MHDC by the legislature in no wise attribute the state's sovereignty to it. MHDC cannot be designated as the state's alter ego. State exrel. Thompson v. Board of Regents for Northeast Missouri State Teachers'College, 264 S.W. 698, 700 (Mo. banc 1924).
The Supreme Court of Missouri considered the question of whether or not the revenues of independent authorities or commissions similar to MHDC were subject to Art. III, § 36, in State ex inf. Danforthex rel. Farmers' Electric Cooperative, Inc. v. State EnvironmentalImprovement Authority, 518 S.W.2d 68 (Mo. banc 1975). At issue in that case were the revenues of the State Environmental Improvement Authority which was created by § 260.010, establishing the authority as "a governmental instrumentality of the state of Missouri . . . which shall constitute a body corporate and politic" (a provision identical to § 215.020.1). The court concluded that the State Environment Improvement Authority was an independent agency and that its revenues and moneys were not state funds within the meaning of Art. III, § 36.
The same court construed a virtually identical provision, § 360.020, creating the Health and Educational Facilities Authority as "a body politic and corporate" constituting "a public instrumentality and body corporate." Menorah Medical Center v. Health and EducationalFacilities Authority, 584 S.W.2d 73 (Mo. banc 1979). The court concluded that the revenues and moneys of the authority were not subject to the provisions of Art. III, § 36 and Art. IV, § 15. The court stated:
 [T]he Authority, though it is a public body and instrumentality, is an entity apart from the state. Thus, even if its funds are public funds, they may not be state funds subject to [Art. III, § 36]. Id. at 82.
We believe that this reasoning also applies to MHDC. Therefore, we conclude that the General Assembly did not intend that MHDC moneys and revenues be subject to the constitutional and statutory provisions requiring state moneys to be deposited in the state treasury.
This conclusion is further enhanced by reference to §§ 215.200
and 215.230. Section 215.200 provides that MHDC is exempt from any state or local taxes and assessments. If the legislature had intended that MHDC funds be deposited in the state treasury because they were state moneys, this provision would be superfluous and meaningless. The same is true of § 215.230 which provides that all rights and properties of MHDC, upon its termination or dissolution, shall be vested in the state.
The same rationale applies to your second question concerning whether or not MHDC fees are subject to control by the legislature through the appropriation process. Because MHDC revenues are not required to be deposited in the state treasury, there clearly is no need for the appropriation process required by the state constitution or any statutory provision.
CONCLUSION
It is, therefore, the opinion of this office that the fees and revenues of MHDC are not subject to constitutional and statutory mandates that all state revenue and other moneys from any source whatsoever be deposited in the state treasury and that the MHDC fees and revenues are not subject to appropriation by the General Assembly.
The foregoing opinion, which I hereby approve, was prepared by my assistant, Paul M. Spinden.
Yours very truly,
 JOHN ASHCROFT Attorney General