Dear Dr. Antonio:
This is in response to your questions as follows:
 1. Is the Missouri Housing Development Commission subject to 15 CSR 40-2.020, which requires that any contracts for independent auditing or accounting services entered into by state officers, agencies and institutions be submitted to the state auditor for approval?
 2. Is the Missouri Housing Development Commission subject to the rules and regulations concerning travel and subsistence expenses promulgated by the commissioner of administration pursuant to Section 33.090, RSMo 1978?
 3. Is the Missouri Housing Development Commission subject to the state purchasing requirements of Chapter 34, RSMo 1978?
 4. Is it legally permissible for the Missouri Housing Development Commission to hire employees by contracting directly with them rather than hiring them through the merit system? Is it legally permissible for MHDC to contract to pay the executive director a higher salary than that specified in CARL's departmental plan, approved by Governor Teasdale on March 18, 1980, found in Appendix C(1), RSMo Supp. 1980?
The General Assembly created the Missouri Housing Development Commission (MHDC) in 1969 as "a governmental instrumentality of the state of Missouri . . . which shall constitute a body corporate and politic." Section 215.020.1, RSMo 1978. From its inception until the effective date of the Omnibus State Reorganization Act of 1974 (Appendix B, RSMo 1978), May 2, 1974, MHDC was not assigned to any department of state government. The Omnibus State Reorganization Act assigned MHDC to the Department of Social Services by a type III transfer. Appendix B, Section 13.10. A type III transfer is described in Appendix B, Section 1.7(c) as:
 the transfer of a . . . commission . . . to the new department with only such supervision by the head of the department for budgeting and reporting as provided under subdivisions (4) and (5) of subsection 6 of this section and any other supervision specifically provided in this act or later acts. Such supervision shall not extend to substantive matters relating to policies, regulative function or appeals from decisions of the . . . commission unless otherwise provided by this act or later acts.
On May 3, 1974, House Bill 1797, Second Regular Session, 77th General Assembly (Appendix B(1), RSMo 1978), transferred MHDC to the Department of Consumer Affairs, Regulation and Licensing (CARL). Section 1 of H.B. 1797 provides in pertinent part:
 The provisions of [the Omnibus State Reorganization Act of 1974], as they relate only to the . . . state housing development commission shall not take effect as provided in that act. . . . [Emphasis added].
Thus, H.B. 1797, by its own terms, not only nullifies the type III transfer originally contemplated for MHDC, it removes MHDC entirely from the provisions of the Omnibus State Reorganization Act of 1974.
Section 3 of H.B. 1797 provides:
 The Missouri Housing Development Commission, Chapter 215, RSMo, 1972 Supplement, is assigned to the Department of Consumer Affairs, Regulation, and Licensing but shall remain a governmental instrumentality of the State of Missouri and shall constitute a body corporate and politic. [Emphasis added].
In our Opinion No. 168, Antonio, 1981, we opined that:
 fees and revenues of MHDC are not subject to constitutional and statutory mandates that all state revenue and other moneys from any source whatsoever be deposited in the state treasury and that the MHDC fees and revenues are not subject to appropriation by the General Assembly.
In so ruling we stated:
 [Chapter 215], coupled with the provisions creating MHDC as a governmental instrumentality constituting a body corporate and politic, make it clear that the legislature intended MHDC to be an entity distinct from the state, established for the specific purpose of providing low-income or moderate-income housing to residents of Missouri. Although MHDC represents the state in the performance of its duties, . . . it is but an instrumentality through which the state provides a service it could not otherwise provide. [Emphasis added].
H.B. 1797, Appendix B(1), Section 6, describes the relationship which exists between MHDC and CARL as follows:
 All staff for . . . the Missouri Housing Development Commission shall be provided by the [director] of the [department it is] assigned to. The [director] shall appoint [a director] of staff to service . . . the Missouri Housing Development Commission. The [director] of staff shall be qualified by education, training, and experience in the technical matters of the body to which he or she is assigned and his or her appointment shall be approved by the body to which he or she is assigned, and he or she shall be removed or reassigned on their request in writing to the [director] of the [department]. All other employees assigned to work for . . . the Missouri Housing Development Commission except the [director] of staff, [his or her] personal [secretary], and two deputies shall be appointed by the [director] of the [department] in accord with chapter 36, RSMo 1969, and shall be assigned and may be reassigned as required by the [director] of the [department] in such manner as to provide optimum service, efficiency, and economy. [Such] body shall be charged for state costs relating to administration, under contract negotiated by [the] department and the body assigned to the department and approved by the commissioner of administration. All charges shall be payable to the state's general revenue fund.
By its passage of H.B. 1797, which nullified the type III transfer contemplated in the Omnibus State Reorganization Act for MHDC, by its requirement that MHDC contract with CARL for CARL services, and by its designation of MHDC as a governmental instrumentality and body corporate and politic, we believe the General Assembly intended that MHDC remain an entity distinct from the state except to the extent expressly provided in H.B. 1797 and in Chapter 215.
The General Assembly's treatment of the Missouri Health and Educational Facilities Authority, Chapter 360, RSMo, is instructive. The statutory scheme creating the Missouri Health and Educational Facilities Authority (HEFA) is substantially similar to that under which MHDC operates. The General Assembly stated that HEFA "is hereby constituted a public instrumentality and body corporate, . . ." Section 360.020, RSMo 1978. HEFA was created after the passage of the Omnibus State Reorganization Act and H.B. 1797, and was assigned to CARL. Section 360.140, RSMo 1978, provides:
 The health and educational facilities authority is assigned to the department of consumer affairs, regulation and licensing. The authority shall, annually, on or before February first of each year, file with the director of said department a report of its previous year's income, expenditures and revenue bonds issued and outstanding.
In Menorah Medical Center v. Health and Educational FacilitiesAuthority, 584 S.W.2d 73 (Mo. banc 1979), the Missouri Supreme Court, in construing Chapter 360, RSMo, stated:
 The Authority is not the state . . . The Authority is established as a "body politic and corporate" which is a "public instrumentality." § 360.020. Similar bodies have been adjudged as "separate entities" from the state.
* * *
 [T]he Authority, though it is a public body and instrumentality, is an entity apart from the state. [Emphasis added.] Id. at 78, 82.
See also State ex inf. Danforth ex rel. Farmers' Electric Cooperative,Inc. v. State Environmental Improvement Authority, 518 S.W.2d 68
(Mo. banc 1975).
Because the provisions of Chapter 360 regarding the structure and funding of the Health and Educational Facilities Authority are substantially similar to those which govern MHDC, we believe the reasoning of the Supreme Court in Menorah Medical Center applies to MHDC.
We note further that MHDC is entirely self-supporting, financing both its statutory programs and its operations out of income generated from its sale of bonds and mortgage arbitrage. Aside from the initial $1,000,000 appropriation provided MHDC by the General Assembly as start-up capital (which MHDC has repaid the state), no general revenue is currently appropriated to fund ongoing MHDC operations.
 I. IS THE MISSOURI HOUSING DEVELOPMENT COMMISSION SUBJECT TO 15 CSR 40-2.020, WHICH REQUIRES THAT ANY CONTRACTS FOR INDEPENDENT AUDITING OR ACCOUNTING SERVICES ENTERED INTO BY STATE OFFICERS, AGENCIES AND INSTITUTIONS BE SUBMITTED TO THE STATE AUDITOR FOR APPROVAL?
 15 CSR 40-2.020(1), promulgated by the State Auditor, provides:
 No state officer, agency or institution shall enter into any agreement with any accounting or auditing firm or employ any person to perform audit functions or establish accounting systems until a copy of the contract or agreement has been approved by the state auditor in writing. [Emphasis added].
The cited regulation applies only to state officers, agencies and institutions. However, the Supreme Court's reasoning in MenorahMedical Center and our Opinion No. 168 makes it clear that MHDC is not the state but is a separate entity from the state.
It is our opinion that 15 CSR 40-2.020(1) is not applicable to MHDC; MHDC may hire independent accountants and auditors without the approval of the state auditor.
 II. IS THE MISSOURI HOUSING DEVELOPMENT COMMISSION SUBJECT TO THE RULES AND REGULATIONS CONCERNING TRAVEL AND SUBSISTENCE EXPENSES PROMULGATED BY THE COMMISSIONER OF ADMINISTRATION PURSUANT TO SECTION 33.090, RSMo 1978?
Section 33.090, RSMo 1978, provides:
 The commissioner of administration shall be empowered to promulgate rules and regulations governing the incurring and payment of reasonable and necessary travel and subsistence expenses actually incurred on behalf of the state. [Emphasis added.]
A necessary precondition to the operation of Section 33.090
and regulations promulgated pursuant thereto is that the travel and subsistence expenses be "incurred on behalf of the state." Since under the Menorah reasoning MHDC is an entity distinct from the state, we believe Section 33.090 and regulations promulgated thereunder do not apply to MHDC.
 III. IS THE MISSOURI HOUSING DEVELOPMENT COMMISSION SUBJECT TO THE STATE PURCHASING REQUIREMENTS OF CHAPTER 34, RSMo 1978?
Section 34.030, RSMo 1978, provides:
 The commissioner of administration shall purchase all supplies for all departments of the state, except as in this chapter otherwise provided. The commissioner of administration shall negotiate all leases and purchase all lands, except for such departments as derive their power to acquire lands from the constitution of the state. [Emphasis added].
Section 34.010.2, RSMo 1978, defines "department" as follows:
 The term "department" as used in this chapter shall be deemed to mean department, office, board, commission, bureau, institution, or any other agency of the state, except the legislative and judicial departments. [Emphasis added].
As we have previously stated we believe MHDC is an entity distinct from the state. Therefore, it is our opinion that Chapter 34 does not apply to MHDC.
 IV. IS IT LEGALLY PERMISSIBLE FOR THE MISSOURI HOUSING DEVELOPMENT COMMISSION TO HIRE EMPLOYEES BY CONTRACTING DIRECTLY WITH THEM RATHER THAN HIRING THEM THROUGH THE MERIT SYSTEM? IS IT LEGALLY PERMISSIBLE FOR MHDC TO CONTRACT TO PAY THE EXECUTIVE DIRECTOR A HIGHER SALARY THAN THAT SPECIFIED IN CARL'S DEPARTMENTAL PLAN, APPROVED BY GOVERNOR TEASDALE ON MARCH 13, 1980, FOUND IN APPENDIX C(1), RSMo SUPP. 1980?
Section 6, Appendix B(1), RSMo 1978, (quoted in its entiretysupra) states that:
 All other employees [of MHDC] except the [director] of staff, [his or her] personal [secretary], and two deputies shall be appointed by the [director] of the [department] in accord with chapter 36, RSMo 1969 [State Merit System]. [Emphasis added.]
We cannot imagine a clearer legislative expression regarding the applicability of the merit system to MHDC.
It is our understanding that MHDC utilizes the services of several independent contractors for accounting and auditing purposes. While these persons work solely for MHDC, they are independent contractors, not employees, working hours they choose and maintaining responsibility for their own income tax and Social Security withholding. As we previously stated in our answer to your first question, such persons may be hired without the approval of the state auditor; they provide a continuous, independent accounting service which enhances the efficiency of MHDC and the cost-effectiveness of the annual audit required under Section215.240, RSMo 1978. We do not intend for this opinion to require that this practice cease; however, all persons who are employees of MHDC not excepted by H.B. 1797 or other provision of law must be selected in accordance to the merit system.
The departmental plan for CARL, filed March 17, 1980, and approved by Governor Teasdale March 18, 1980 (See Appendix C(1), RSMo Supp. 1981), was submitted pursuant to Section 1.6(2) of the Omnibus Reorganization Act of 1974 (Appendix B, RSMo 1978). That plan is merely an internal organization plan for CARL, formulated by the director of CARL "to promote economic and efficient administration and operation of the department." Appendix B, Section 1.6(2). It does not have the force of law nor can it amend or circumvent statutory enactments.
We believe Appendix B(1), Section 6, infers the legislature's intent with regard to the pay of the executive director of MHDC. As we earlier noted, H.B. 1797 removes MHDC from the provisions of the Omnibus State Reorganization Act. We find no authority in Appendix B(1) for the director of CARL to establish a salary for the executive director of MHDC. Absent such authority, we do not believe the director of CARL may establish such a salary.
We believe the legislature fully intended for MHDC commissioners to have great latitude in the manner in which the executive director is paid. The position is one of a technical nature which requires an executive director proficient in housing and financial matters and who is, in addition, responsive to the mission of MHDC as well as to its commissioners. In order to attract such a person, we believe MHDC must have sufficient flexibility to pay a salary commensurate with the unique talents required. Therefore, it is our opinion that the departmental plan for CARL notwithstanding, MHDC may contract to pay its executive director a salary higher than that established in Appendix C(1), RSMo Supp. 1981.
CONCLUSION
For the reasons stated herein, it is our opinion that:
1. The Missouri Housing Development Commission may contract for independent auditing or accounting services without the approval of the state auditor;
2. The Missouri Housing Development Commission is not subject to the rules and regulations concerning travel and subsistence expenses promulgated by the Office of Administration pursuant to Section 33.090, RSMo 1978;
3. The Missouri Housing Development Commission is not subject to the state purchasing act, Chapter 34, RSMo 1978; and
4. The Missouri Housing Development Commission may enter into contracts with independent accounting and auditing personnel and may pay its executive director a salary higher than that specified in the Department of Consumer Affairs, Regulation and Licensing departmental plan. The Missouri Housing Development Commission employees must be appointed through the merit system in accordance with (and with the exceptions noted in) Section 6, Appendix B(1), RSMo 1978.
Very truly yours,
 JOHN ASHCROFT Attorney General